To: *Christine Anderson*

Date *February 9, 2007*

From: *David Spokony*

Subject: *Supervisor/subordinate relationship*

This memorandum will serve to confirm the conversation we had on *this date*, at which I stated my concerns regarding your (~~attendance~~) (~~punctuality~~) (conduct), specifically:

*your refusal to accept Sherry Cohen as your supervisor. You resist her direction.*

During this counseling session the following explanations and agreements concerning this matter:

*You will interact with your supervisor in a normal way. Formal meetings and written communication are not a substitute for conversation*

I told you that your progress in this area will be monitored. We will meet again to discuss this matter further (if necessary) on *March 5* 20*07*.

*I have received counseling, but do not accept the charges levied against me*

I hereby acknowledge that I have received a copy of this statement but do not necessarily agree with its contents. I understand that a copy of this statement will be placed in my permanent personnel folder and may be used in any subsequent disciplinary action brought against me. Further, I understand I have the right to answer this statement; and my answer, if any, will be attached to the file copy.

*February 9, 2007*
Date

Signature of Employee
*Christine C. Anderson*

cc. Permanent Personnel Folder

CONFIDENTIAL DDC 1638

# OUTTEN & GOLDEN LLP

Wayne N. Outten
Anne Golden
Adam T. Klein
Laurence S. Moy
Gary Phelan
Kathleen Peratis
Piper Hoffman
Justin M. Swartz
Tarik F. Ajami

*Advocates for Workplace Fairness*

*Of Counsel*
Jack A. Raisner
Allegra L. Fishel
Lewis M. Steel
Wendi S. Lazar
———
Rachel M. Bien
Cara E. Greene
Mark R. Humowiecki
Carmelyn P. Malalis
Stephanie M. Marnin
Tammy Marzigliano
ReNika C. Moore
Linda A. Neilan
Tara Lai Quinlan
Nantiya Ruan
Anjana Samant

January 24, 2007

**VIA FEDERAL EXPRESS**
David Spokony, Esq.
Deputy Clerk of the Court
New York State Supreme Court
Appellate Division, First Department
27 Madison Avenue
New York, NY 10010

Re: Sherry K. Cohen, Esq.
 Complaint of Christine C. Anderson, Esq.

Dear Mr. Spokony:

My client, Christine C. Anderson, and I seek confirmation of Sherry Cohen's completion of the management training course, pursuant to the recommendation of the Court, as a result of Ms. Anderson's complaint. Ms. Anderson has requested the following information:

1. What was the title and the content of the management course taken by Ms. Cohen?

2. When was the course undertaken and completed?

3. What was the institution at which the course was taken?

4. What was the duration of the course?

5. Was a certification of completion furnished?

3 Park Avenue, 29th Floor    New York, NY 10016   Tel 212-245-1000   Fax 212-977-4005
4 Landmark Square, Suite 201  Stamford, CT 06901   Tel 203-363-7888   Fax 203-363-0333
og@outtengolden.com   www.outtengolden.com

CONFIDENTIAL DDC 1651



Ms. Anderson told me that at 11:10 a.m. on December 29, 2006, during a meeting and in the presence of Andral Bratton, Second Deputy, Ms. Cohen told Ms. Anderson that she was "silly" and that she had a "silly attitude". Ms. Cohen's comments conflict with both the letter and the spirit of the remedial action taken as a result of Ms. Anderson's complaint. We request that you advise Ms. Cohen to refrain from her continued denigration of Ms. Anderson.

I look forward to hearing from you.

Sincerely,

Gary Phelan

GP:dmc
cc: Christine Anderson, Esq.

2

CONFIDENTIAL DDC 1652

2 November 06

I was present at a meeting between Sherry Cohen and Christine Anderson from 10:30 to 11:30 am. During this meeting, two immigration-related files were discussed and Christine agreed to recommend dismissal on both.

With respect to the N███████matter, Sherry voiced no objection to an Admonition based upon a violation of DR 6-101 [A] [1], but felt there was insufficient evidence to sustain a violation of DR 1-102 [A] [4]. Christine disagreed and there was an extensive discussion of the facts attendant to the case. This matter will be revisited upon Tom Cahill's return. { Post-script, 20 Nov- I suggested, as a compromise, giving insufficient info to the Committee could violate DR 1-102 [A] [5] with no mens rea requirement.}.

Finally, at the beginning and ending of the meeting, Sherry advised Christine that she {Sherry} was her direct supervisor and that Judith Stein had no supervisory role over her. Christine stated that she had been reporting to Judith for 5 ½ years and until today did not understand that all supervisory work was to go directly to Sherry, Sherry stated that notwithstanding any previous impressions held by Christine, Sherry is her direct supervisor.

15 Nov 06

Tom, Sherry and Christine met today at 11:10. Christine transcripted [sic] the meeting in shorthand and stated she had received no notice of the meeting.

Tom stated that the purpose of the meeting was to state that he and Sherry needed to communicate directly with her regarding her caseload, as opposed to formal e-mails. He stated that the prior matter with Spokony had been resolved and he was under the impression that Christine thought it hadn't. He asked Christine what could be done to improve the situation.

Christine reserved her right to reply in the future. She stated that she had asked Tom on several occasions to remove Sherry as her direct supervisor and that only during the last meeting w/ Sherry { w/me present} did Sherry inform Christine that she was her workload supervisor. For the past five years, according to Christine, she always forwarded work to Tom with the explanation that "Judith's comments and changes" were incorporated. She stated that she felt uncomfortable and "unsafe" to have Sherry enter her office.

Sherry advised Christine that she and Tom thought with regard to N██████that the misrepresentation and incompetence Admo could not be sustained, but an Admo for neglect could. Christine stated that she had put much work in the file and, with regard to her shorthand notes which had asked for earlier in the week, she will transcript those portions that were not already clear in her memo and chronology.

20 Nov 06

CONFIDENTIAL DDC 1714

With regard to the Christine situation, I have, on at least several occasions, suggested to Tom and to Sherry that the situation could be resolved by having Christine transferred to my supervision, as people have been transferred to others in the past due to personality conflicts {e.g. Naomi, La Trisha}. Tom declined the offer on the grounds that Christine needs to understand that Sherry is the First Deputy Chief Counsel. Sherry advised me that this would be impractical because it has gone "past that stage".

29 December 06

Sherry, Christine and I met today at 11:15 to discuss Sherry's questions re N██████. The meeting began by Christine giving me and Sherry copies of the attached. Sherry told Christine that she had not been copying me with her e-mail to Christine.
   Christine told Sherry that the N█████ file was now Sherry's and that her work was finished. She stated that she did not have a special file from the doctor and that all documents in the Insurance Dept. file were in fact from there. Further, none of Christine's shorthand notes were pertinent to an interview she had with a witness.
   The meeting ended with Sherry stating that the whole matter was silly because of Christine's attitude and stated that her questions to Christine hardly constituted "micro" managing. Christine told Sherry not to make aspersions on Christine's attitude and both rejected each other's contentions.

9 May 07

Sherry and Christine met re : M███ Sherry told Christine that Exhibit E, referred to in the Admo, contained the medical reports re C's human bite, and not the rat bite Sherry was looking for. Sherry asked Christine to call R's counsel to ask for a copy of the rat bite report. Christine asked Sherry to return the file to her. Sherry refused, saying that she needed the file to form an opinion as to the proposed admo. She asked Christine whether she was refusing to call R's counsel, to which Christine said she was so refusing, stating that the report was the " least important thing in the case".

14 May 07

At today's case conference, in essence Christine stated that her activities in this trimester were reflected in the attached First Trimester Report and was not in a position to describe what needed to be done with the remainder of her cases. Sherry asked for an

MAY-17-2007  13:44                                                          P.01

## DEPARTMENTAL DISCIPLINARY COMMITTEE
### SUPREME COURT, APPELLATE DIVISION
### FIRST JUDICIAL DEPARTMENT

61 Broadway
New York, New York 10006          *CONFIDENTIAL*
(212) 401-0800
FAX: (212) 401-0810

DATE: _____5-17-07_____

TO: _____David Spokony_____

FIRM: _____

RECEIVING FAX NO.: _212 - 213 - 5136_

FROM: _____Sherry K Cohen_____

RE: _____cc A_____

NUMBER OF PAGES (including this one): __3__

COMMENTS: *************************************************************

*********************************************************************

PLEASE NOTE: Pursuant to Judiciary Law, Section 90(10), the information contained in this
facsimile message is PRIVATE AND CONFIDENTIAL and is intended only for the use of the
individual above and others who have been specifically authorized to receive such. If the
recipient is not the intended recipient, you are hereby notified that any dissemination, distribution
or copy of this communication is strictly prohibited by law. If you have received this
communication in error, or if any problems occur with transmission, please notify us
immediately by telephone at (212)401-0800. Thank you.

Departmental Disciplinary Committee

12/29/06

I met with CCA at about 11:15 a.m.

Andral was there. The door to my office remained open. CCA declined to sit at the round table where Andral and I sitting even though I told her I might need to look at some documents which were on the table. She first gave me and Andral a copy of her email in response to mine of yesterday. Basically, she doesn't agree that she should have to answer questions I put to her about N██████ and viewed my contact with her yesterday about the K█████ matter as "micro-management". Her email speaks for itself as does mine [once again she corrected my misspelling of K█████'s name], but the point is that because of her hand-delivering a copy of her email which she had apparently just sent,  the atmosphere was immediately very hostile and CCA's responses to rather simple questions turned into speeches about how many other important things she could be doing and what a waste of time it was for her to have to meet with me.  I managed to get the answers to my questions: (1) that she had not taken notes of her conversation with Lopez and (2) that the steno notes attached to my 12/21/06 memo (to which she had not previously responded) were from Friedman's deposition.  I also confirmed that although she obtained the doctor's file, she did not maintain the documents in a separate file. [This means I will have to verify with the doctor that his file contained the notices from NF sent in July and September 1999].

In response to CCA's repeated objections to her having to answer questions I put to her, I stated something to the effect that it is her attitude that makes things difficult and it was silly to have to go through this. At that point CCA replied in a very forceful way that I should <u>never</u> "attempt to characterize her attitude". It was said in a threatening tone. I told her that that was my opinion in the same way as it was her opinion that I was engaged in micro-management. It was a very unpleasant encounter and one that makes it more and more difficult for me to do the work I have to do.  I have to be able to speak to the attorneys about their cases and having to arrange a formal meeting with CCA just to answer two or three simple questions is becoming a real burden.

*note: I checked CCA's email and realized that I had been sending last night. I didn't have notice put on my computer for some reason until after the meeting.  S/cc 12:50 pm*

CONFIDENTIAL DDC 1742

11/21/06

*To David*
*file*
*C Anderson*
*11.22*

- 1 or 2 meetings w/ Andrea
       — could have been interchanges but

1 case Tom + Sherry disagree w/ Christine on violation

avoids personal contact w/ T + S → so by email communicat

1 case — 2 aspects — Sherry probably to re-write
       Administin

                                                —> hostile
                                                work
                                                environment
Tom said — "we need to communicate"
       CA → "I reserve my right to respond."

w/ Sherry  ———→  "I'm afraid to be alone in room
                          w/ you."

CONFIDENTIAL DDC 1758

# MEMORANDUM

To: Record
From: David Spokony
Re: Anderson/Cohen
Date: October 12, 2006

Yesterday, the meeting to carry out the recommendations contained in my report was held. Ms. Cohen offered a sincere apology, which Ms. Anderson accepted. Mr. Cahill told Ms. Anderson that she did not make policy decisions, that her function was limited to the matters assigned to her. Ms. Anderson noted her awareness of her responsibilities.

When Ms. Anderson stated that she was considering her options and had not accepted my report, I closed the meeting. Mr. Phelan, Ms. Anderson's counsel, attended the meeting, but did not speak.

The case conference was held in Ms. Cohen's office about 10 minutes later. My hope that Ms. Cohen and Ms. Anderson would speak privately in the interim, while I chatted with Tom, was not realized.

The case conference was proceeded with the participants speaking in a professional tone, and the participants were cordial, though not always collegial. At the outset, I turned down Ms. Anderson's offer of a copy of material she prepared out of confidentiality concerns, and when Ms. Cohen directed an explanation to me, I directed her to conduct the meeting with the understanding that I was an there to observe. During the course of the meeting Ms. Cohen offered a second apology.

In the main, Ms. Anderson was given direction, e.g., give particular priority to specific cases, give general priority to 2004 cases. The discussion of each case was brief. Issues were addressed in a number of cases, and, in the main, Ms. Anderson's explanations were not challenged, and she was not subjected to probing inquiry.

At one point, the conversation turned to "moving on," Ms. Anderson took exception to Mr. Cahill's "stewing" remark, and Mr,. Cahill said he was not angry, in response to Ms. Anderson's concern that he was angry with her.

Separately, I followed up the discussion of a newer particular matter with questions because the outline of the complaint was so brief and the discussion was not particularly informative, even if it apparently satisfied the purposes of the case conference. My concern was that the discussion concerning this case could have been more purposeful, even though the matter had been pending but a short time. The matter concerned a complaint against a criminal lawyer who was the subject of four complaints. The short discussion showed that the defendant complained that he had been denied his right to testify at "trial" when substitute counsel appeared. The discussion touched on the need to raise the issue pursuant to an ineffectiveness of

CONFIDENTIAL DDG 1768

counsel motion addressed to a court and a possible disposition in light of the other complaints.

On the other hand, the followup discussion quickly revealed that the complainant might be claiming that he was denied the right to testify at the grand jury, and that trial counsel may not have appeared at a calendar call. However, as of the case conference, the complaint appeared to have been no more than "screened" or directly assigned to the staff attorney.



Departmental Disciplinary Committee
Supreme Court, Appellate Division
First Judicial Department
61 Broadway
New York, N.Y. 10006
(212) 401-0800
FAX:(212) 401-0810

DATE:      5/18/07

TO:    David Spokony

FROM:      Sherry K. Cohen

RE:    Christine C. Anderson

    Following receipt of the Non-Contract Grievance filed by Ms. Anderson yesterday, I am enclosing copies of recent emails and memoranda generated after April 10, 2007 through yesterday between Ms. Anderson and myself as well as memoranda to files generated by me. These documents reflect Ms. Anderson's continued resistance to supervision by me and overall disrespectful and hostile attitude toward me.

    My most recent memoranda, dated May 17, 2007, to Ms. Anderson concerning the Hol█ matter was placed in her office mailbox, as noted in my email to her, at 2:34 p.m. yesterday.   Ms. Anderson appears to have left the office around lunchtime yesterday and I did not see her in the office when I left about 6:10 p.m.  The grievance was received at reception at 2:48 p.m. (I have enclosed a copy of the envelope).

CONFIDENTIAL DDC 2208

DEPARTMENTAL DISCIPLINARY COMMITTEE
SUPREME COURT, APPELLATE DIVISION
FIRST JUDICIAL DEPARTMENT

61 Broadway
New York, New York 10006
(212) 401-0800
FAX: (212) 401-0810

*Confidential*

DATE: 5-10-07

TO: David Spokony

FIRM:

RECEIVING FAX NO.: 212 - 213 - 5136

FROM: Sherry Cohen

RE: CCA

NUMBER OF PAGES (including this one): 8

COMMENTS: •••••••••••••••••••••••••••••••••••••••••••••••••••••••

Emails: 4/24/07, 5/2/07, 5/3/07, 5/8/07,
5/9/07,
Draft reply to 5/9/07

•••••••••••••••••••••••••••••••••••••••••••••••••••••••

PLEASE NOTE: Pursuant to Judiciary Law, Section 90(10), the information contained in this facsimile message is PRIVATE AND CONFIDENTIAL and is intended only for the use of the individual above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited by law. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone at (212)401-0800. Thank you.

Departmental Disciplinary Committee

CONFIDENTIAL DDC 2287

# MEMORANDUM

Confidential

To: Acting Presiding Justice Peter Tom and the Liaison Committee to the DDC (Justices John Buckley, Angela Mazzarelli, David Friedman, Joseph Sullivan, Milton Williams and Eugene Nardelli)
From: David Spokony
Re: Christine Anderson, Esq., DDC staff attorney
Date: April 12, 2007

Since Ms. Anderson continues to resist appropriate supervision, despite counseling and other efforts to restore a proper supervisor/subordinate relationship, she is subject to termination. The attached material contains an account of her recent refusal to follow directions (attachment 11); as well as the fruitless effort to restore what was once a proper professional relationship between Ms. Anderson and her supervisor, Ms. Sherry K. Cohen, the Deputy Chief Counsel (attachments 1- 10).

Ms. Anderson's insubordination reflects that she is not properly fulfilling the essential obligations of her position, and further counseling appears to be pointless.

Attachments

1. Justice Buckley's October 24, 2006 letter to Gary Phelan, Esq.

2. Sherry Cohen's January 25, 2007 request for counseling.

3. Gary Phelan's January 24, 2007 letter.

4. My January 30, 2007 letter to Gary Phelan, Esq.

5. My January 30, 2007 letter to Christine Anderson

6. My February 9, 2007 memorandum of my counseling session with Ms. Anderson.
      (The followup counseling session was re-scheduled for May 23, 2007).

7. Ms. Anderson's February 19, 2007 response to the counseling session.

8. My September 26, 2006 report to Catherine O'Hagan Wolfe

9. My October 12, 2006 memorandum to file.

10. Christine Anderson's October 13, 2006 "appeal."

11. Sherry Cohen's April 11, 2007 memorandum with attachments.

cc: Catherine O'Hagan Wolfe

CONFIDENTIAL DDC 2294

JUN-06-2007  13:00                                                    P.01

## DEPARTMENTAL DISCIPLINARY COMMITTEE
## SUPREME COURT, APPELLATE DIVISION
## FIRST JUDICIAL DEPARTMENT

61 Broadway
New York, New York 10006
(212) 401-0800
FAX: (212) 401-0810

*K.F*

DATE: _6-6-07_

TO: _David Spohong_

FIRM: _____

RECEIVING FAX NO.: _212-213-5136_

FROM: _Sherry K Cohen_

RE: _Hol▇/ CCA_

NUMBER OF PAGES (including this one): _3_

COMMENTS: *******************************************************************

_5/29 email + proposed  revised_

*******************************************************************

PLEASE NOTE: Pursuant to Judiciary Law. Section 90(10), the information contained in this facsimile message is <u>PRIVATE AND CONFIDENTIAL</u> and is intended only for the use of the individual above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited by law. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone at (212)401-0800. Thank you.

Departmental Disciplinary Committee

CONFIDENTIAL DDC 2497

JUN-06-2007  13:00                                                              P.02

Departmental Disciplinary Committee
Supreme Court, Appellate Division
First Judicial Department
61 Broadway
New York, N.Y.  10006
(212) 401-0800
FAX:(212) 401-0810

DATE:       6/6/07

TO:    Christine C. Anderson

FROM:    Sherry K. Cohen

RE:    Hol█

    I am returning the Hol█file to you – with additional documentation attached – for
further investigation on the issue of the judgment against him for his school loan.  We obtained
documents showing efforts made by counsel to the NYS Higher Education Service Corp. to
collect on the judgment from 1996. A representative from the law firm handling the matter for
the corporation explained that they do not have copies of the letters sent to Hol█over time but
at least until 11/05 the letters were never returned. Up until then the letters appear to have been
sent to Hol█'s Jamaica address – which was the address originally on the IOLA account in
question.  In mid- August 2006 they got his Boynton Beach address.  The matter has now been
referred to a collection agency whose records reflect collection efforts in 2007.

    We also obtained Hol█s admission file which reflects that he promised to repay
numerous creditors – among them the school loan -- and that he had made a good faith effort to
do so, despite his claim of having no money.  These claims and those he apparently made to you
about the judgment are at odds with his statements in his deposition about being financially
independent and owning land that is worth a substantial amount of money.

    These issues need to be clarified before going to the Policy Committee with any
recommendation.  An inference could be drawn that Hol█ intentionally did not have any
personal checking accounts – if that is really the case – and used his IOLA account for personal
funds to shield the funds from creditors.  The collection history shows an attempted contact with
Hol█ at around the time he claimed to have opened the IOLA account in 1999.  Thus, in
particular, we need to depose Hol█ regarding this loan judgment (and any others), his various
addresses from W. 164th street to date,  his work history from law school to date,  his
understandings and/or expectations about efforts to collect on the loan, etc etc.

    Please let me know what you find out and what your recommendation is.

CONFIDENTIAL DDC 2498



# *Supreme Court Appellate Division*
## *First Department*

### *27 Madison Avenue*
### *New York, N.Y. 10010*

*David Spokony*                                    *212-340-0400*
*Deputy Clerk of the Court*


June 14, 2007


<u>Certified Mail - #7002 3150 0000 3506 9258</u>
<u>Returned Receipt Requested</u>

Ms. Christine Anderson
227 Riverside Drive
Apartment 2N
New York, New York 10025

Re: Non-contract Grievance

Dear Ms. Anderson:

Your grievance was filed on May 16, 2007 . The grievance seeks "[r]emoval from contact w/ [sic] Ms. Cohen. My workload supervisor, Judith Stein, for six years can continue to supervise my work.

The grievance is denied.

Despite counseling, you are improperly seeking to avoid working with your supervisor, Ms. Cohen, the Deputy Chief Counsel of the Departmental Disciplinary Committee, thereby adversely affecting the work of the office. Also, the events recounted in the annex to the grievance form occurred more than 45 days prior to the grievance.

Sincerely,

David Spokony

DS:pb

c: Neil Kirby (w/o encl.)

CONFIDENTIAL DDC 2611