UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CHRISTINE C. ANDERSON,

                Plaintiff,                07 Civ. 9599 (SAS)

     - against -

THE STATE OF NEW YORK, et al

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PLAINTIFF S RESPONSE TO DEFENDANTS
## STATEMENT PURSUANT TO LOCAL RULE 56.1

      Plaintiff Christine C. Anderson, by and through her attorneys, Beranbaum Menken Ben-

Asher & Bierman LLP, pursuant to Local Rule 56.1 of the United States District Court, Southern

District of New York, submits the following response to Defendants  Statement Pursuant to

Local 56.1:

     1.      Admitted.

     2.      Denied to the extent that defendants mischaracterizes plaintiff s job duties  as

Principal Attorney.  Anderson investigated complaints, conducted depositions, interviewed

complainants and reviewed subpoenaed records.  (Anderson 57-58)[1]

---

    [1]     In this R. 56.1 Statement and Plaintiff s Memorandum of Law in Opposition to
Defendants  Motion for Summary Judgment, plaintiff cites to the depositions taken in this case
as follows: (**Name of deponent**, **Page(s)**).  All excerpts to the depositions are attached to the
accompanying Certification of John A. Beranbaum as follows:

        Exhibit 1     Deposition of Christine Anderson
        Exhibit 2     Deposition of Andral Bratton
        Exhibit 3     Deposition of Thomas C. Cahill
        Exhibit 4     Deposition of G. Peta Carrera, M.D.

3.     Admitted

4.     Denied to the extent that Cohen did not become Anderson s supervisor until fall 2006.  (A417, A487 A802, DDC 1366, DDC 1714; Cahill 66)[2]

5.     Denied.  Defendants  decision to have Cohen remain as Anderson s supervisor was in retaliation for Anderson s protected activity.  Plaintiff respectfully refers the Court to Plaintiff s Memorandum of Law at 7-9, Statement of Fact,  Defendants  Refusal to Transfer Anderson,  and the accompanying citations to the record.

6.     Admitted.

7.     Denied to the extent that Spokony s supervision of employment matters at the DDC was limited (Spokony 8-9), and Wolfe, not Spokony, was responsible for supervising and making decisions regarding Anderson s employment.  (Spokony 19,-20, 95, 129-132, Wolfe 73-74, 126, 128, 134-35, 165, 169, 176, 183)

8.     Denied.  Anderson had been hired as a Principal Attorney, but not given the title or pay when she started.  She told Wolfe about the situation, and Wolfe arranged that she receive the proper title and pay.  Neither Cahill nor Spokony were involved.  Bauman Decl., Ex. A, p. 43.

9.     Denied to the extent that Cohen thought Anderson was  mixed race.   (Cohen 9)

Exhibit 5     Deposition of Sherry K. Cohen
Exhibit 6     Deposition of Nicole Corrado
Exhibit 7     Deposition of Monique Hudson
Exhibit 8     Deposition of David Spokony
Exhibit 9     Deposition of Catherine O Hagan Wolfe
Exhibit 10    Affidavit of Kenneth Van Lew

[2]    The citation **A___** refers to documents produced in discovery by plaintiff, and are attached to Beranbaum s Certification as Exhibit 11; the citation **DDC___** refers to documents produced in discovery by defendants, and are attached to Beranbaum s Certification as Exhibit 12.

2

10.     Cohen subsequently reviewed Anderson s admonition letter and decided that it was  too harsh.   She told Anderson that the memo, as written, might lead the Policy Committee to bring charges against H., and she  didn t want to tie up an attorney on a six month trial. When Anderson objected, Cohen announced,  I m going to re-write it.   (Anderson 77) Anderson said that it was improper to re-write the memo to skew the end result, and accused Cohen of trying to  whitewash  the case. (Anderson 77-78; Cohen 65-66; DDC 1369)  Cohen was offended by Anderson s accusation (DDC 1402; Spokony 43), and mentioned it to Cahill. (Cahill 106)  Cohen re-wrote the memo to remove the most serious finding that H. made misrepresentations to the DDC, and to water down allegations of commingling.  She submitted the revised memo to the Policy Committee in May 2006.  (Anderson 76-77)

11.     Admitted.

12.     Denied.  Anderson never raised her voice, only Cohen did.  Anderson never said she was going to order a shredder.  (Spok. Decl. Ex. B-1)

13.     Admitted and denied.  The date of the incident was July 24, 2006.  What happened is as follows: Cohen entered Anderson s office and sharply questioned whether she had destroyed or was planning to destroy the documents.  Anderson responded,  Neither,  and got up from her desk to meet with a complainant.  When Anderson reached for the door handle, Cohen grabbed hold of Anderson s hand, dug her fingernails into Anderson s wrist, shut close the door and said,  You re not leaving this office.   Anderson retreated to the far side of her desk, and told Cohen it would be better for both of them if she left.  After some hesitation, Cohen announced, Now I am leaving your office,  and slammed the door behind her.  (Id.; Anderson 52, 56)

3

14.     Denied to the extent that Anderson bandaged the wound herself and that because of the incident she had to cancel a dinner engagement that evening.  (Anderson 54; 56)

15.     Denied in that Anderson told Wolfe that Cohen s actions in July were  part of retaliation for CA s disagreement [with] SKC s handling of some cases to the detriment of complainants.   (DDC 1457-58)  She told Wolfe,  I have seen incidents of which I disapprove where the complainants are not being served.   (Anderson 93)  Anderson related how a former DDC attorney was representing respondents before the DDC and was trying to improperly influence the disposition of cases, acting as  one of the cogs in the wheel of trying to subvert the mission of our office...  (Id. 98)  Anderson stressed to Wolfe that  complainants were not being served.   (Id. 95)   Wolfe did not ask what other cases, besides H, Anderson was referring to that the DDC was handling to the detriment of complainants.  (Wolfe 86)

16.     Admitted.

17.     Admitted.

18.     Admitted, except that omitted from the paragraph is the fact one of the DDC managers sitting on the panel, Patrick Finnegan, recommended that the DDC limit Cohen s supervisory role with respect to Anderson, a recommendation that went unheeded. (DDC 1415)

19.     Denied.  Wolfe refused, and continued to refuse, Anderson s requests for a different supervisor, in retaliation for Anderson s protected activity.  See Plaintiff s para. 5 above.

20.     Admitted.

21.     Admitted.

22.     Admitted but deny that at the meeting Cahill told Anderson that Cohen continued

4

to be her supervisor.  (DDC 1768-69).  Also, the date of the meeting was October 11, 2006.

23.    Admitted.

24.    Admitted and denied.  The thrust of the Appeal, not mentioned in Def. 56.1 ¶ 24, was that remedial measures recommended in the report, that is, for Cohen to take a management skills course and apologize, were not commensurate with Cohen s offense.  (Spok. Decl. Ex. B 1268-70)

25.    Denied to the extent that Justice Buckley took a position on whether Cohen should serve as Anderson s direct supervisor.  Rather, he opposed Anderson having no contact with Cohen, since she served as the second-in-command at the DDC.  (Spok. Decl. Ex. B, 12-13) In addition, Anderson sent Cahill multiple emails seeking the removal of Cohen as her supervisor.  (DDC 1505-07)

26.    Admitted.

27.    Admitted.

28.    Admitted that the quotations taken from the emails are accurate.  Anderson, having suffered a physical assault by Cohen, was scared to be alone with her in the same room. (DDC 1714; Bratton 59-60)  Denied to the extent that defendants are suggesting that the hostility was one way.  Cohen also emitted hostility to Anderson.  (Bratton 95)

29.    Admitted except to the suggestion that Anderson was feigning illness on February 6, 2007.  She saw her doctor on that day.  (DDC 1634)

30.    Admitted.

31.    Admitted, with the proviso that in her Answer, Anderson stated that she had disagreed with Cohen s handling of multiple cases, and  [w]hat is worrisome is that any dissent,

however justified, is now labeled insubordination.    (DDC 1464)

32.      Admitted.

33.      Admitted.

34.      Admitted.  In stating that Anderson was  subject to termination,  Spokony and Wolfe were recommending to the Justices that Anderson be terminated..  (Spokony 131-32; Wolfe 165)

35.      Admitted.  However, by May 18, 2007, Spokony had already recommended Anderson s termination.  (Spok. Decl. Ex. E-1)

36.      Admitted.  Cohen believed Anderson s termination likely.  (Cohen 242)

37.      Admitted.

38.      Admitted.

39.      Admitted.

40.      Denied.  Anderson presented to DDC management and the Court evidence that respondents well connected and/or represented by former DDC attorneys improperly received lenient treatment.  Anderson s protests were that the DDC was not fulfilling its mandate, not that DDC officials were improperly enriching themselves or getting favors.  (See Pl. s Mem. Law, Statement of Facts,  Anderson s Complaints of DDC Whitewashing,  and references to the record therein)

41.      Denied.  Spokony, Cahill and Wolfe, in taking action against Anderson, relied upon information they received from Cohen, who was prejudiced against blacks and other minorities. (Spok. Decl. C-5, Ex. E-11, 163; DDC 2287; DDC 1727; DDC 2208; DDC 2497-98)

42.      Denied.  In addition to the statements made to Anderson, Cohen made denigrating

statements about blacks and other minorities to other co-employees, and treated black employees, such as Kenneth Van Lew and Monique Hudson, in a disparate fashion.  (See Pl. s Mem. Law, Statement of Facts,  Cohen s Racial Animus,  and references to the record therein)

43.    Denied to the extent that Van Lew and Hudson testified to disparate treatment and racially biased and stereotyping by Cohen.  (See Pl. s Mem. Law, Statement of Facts,  Cohen s Racial Animus,  and references to the record therein)


Dated: February 4, 2009

Beranbaum Menken Ben-Asher & Bierman LLP


By:  _____/s/_____
        John A. Beranbaum   (JB-7944)
        Attorney for Plaintiff
        80 Pine Street, 32nd Floor
        New York, New York 10005
        (212) 509-1616

7