UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHRISTINE C. ANDERSON

                Plaintiff,

      - against -

THE STATE OF NEW YORK, et al.,


              Defendants.

-------------------------------------------------------------X

07 Civ. 9599 (SAS)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN *LIMINE***


BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP

        John A. Beranbaum (JB7944)
        Attorney for Plaintiff
        80 Pine Street, 32nd Floor
        New York, NY 10005
        (212) 509-1616

        ATTORNEY FOR PLAINTIFF

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................... i

PRELIMINARY STATEMENT............................................................. 1

I.    Corrado's Anticipated Trial Testimony Is Proper...................................1

II.   As Plaintiff's Treating Physician, Dr. Carrera May Give His Opinions
      Arising Out of His Treatment Of Plaintiff, Including His Prognosis
      For Her.......................................................................................2

III.  Rumors of Cahill and Cohen Receiving Preferential Treatment..........4

IV.   Plaintiff Exercised Protected Speech in Connection With the "JG"
      Incident, and Therefore Evidence Relating to the Incident Is Relevant
      And Admissible..........................................................................4

V.    Plaintiff Transcribed All Short Hand Notes Requested of Her.............6

VI.   There Are No Exceptional Circumstances Justifying Bifurcation........6

VII.  Bifurcating the Issue of the Amount Of Punitive Damages..................9

VIII. There is No Basis to Exclude Plaintiff's Damages Witness or Limit
      Her Actuary's Testimony.............................................................9

IX.   Defendants Have Waived Their Request For Plaintiff's Tax Returns
      From Eight to Eleven Years Ago.....................................................11

X.    Plaintiff's Expert Should Be Permitted To Testify About Her Future
      Economic Losses........................................................................13

XI.   The Court Has Determined That Plaintiff's Speech Regarding DDC
      Whitewashing Would Be Protected As a Matter of Law, And the Jury
      Now Must Decide If She Made Such Speech.....................................14

CONCLUSION...................................................................................15

# TABLE OF AUTHORITIES

## Case Law

Anderson v. State of New York,
614 F. Supp.2d 404, 427 (S.D.N.Y. 2009)...........................................................14, 15

Brammer-Hoelter v. Twin Peaks Charter Academy,
492 F.3d 1192, 1202 10th Cir. 2007).............................................................................14

Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.,
No. 00 CIV. 5207 (JCF), 2002 WL 1059117, at *10 (S.D.N.Y. May 28, 2002)...................14

Chen v. Republic Restaurant Corp.,
No. 07 Civ 3307 (LTS) (RLE), 2008 WL 793686, at * 2.......................................12

Collings v. Industrial Acoustics, Inc.,
No. 99 CIV 11875 (GEL), 2001 WL 913909, at *6 (S.D.N.Y. Aug. 13, 2001)....................12

Dallas v. Goldberg,
143 F. Supp.2d 312, 315 (S.D.N.Y. 2001)..............................................................6-8

Derienzo v. Metropolitan Transit Auth. and Metro-North RR,
No. 01 Civ 8138 (CBM), 2004 WL 67479, at *2 (Jan. 15, 2004)...........................................3

Epstein v. Kalvin-Miller Int'l, Inc.,
No. 96 Civ 8158 (PKL), 2000 WL 1761052, at *2 (S.D.N.Y. Nov. 29, 2000)....................14

Garcetti v. Ceballos,
547 U.S. 410, 418 (2006)..........................................................................................14, 15

Gatti v. Community Action Agency of Green Cty.,
263 F. Supp.2d 496, 511 (N.D.N.Y. 2003)................................................................14

Guidi v. Inter-Continental Hotels Corp.,
No. 95 Civ 9006 (LAP), 2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003)....................................14

Hogan v. Gen'l Elec. Co.,
144 F. Supp. 138 (N.D.N.Y. 2001).........................................................................14

Howell v. New Haven Bd. of Educ.,
No. 3:02CV736 (JBA), 2005 WL 2179582 (D. Conn. 2005).....................................13

In re Health Management, Inc.,
No. CV 96-0889 (ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 25, 1999)....................12

Lewis v. Cowen,
165 F.3d 154, 163 (2d Cir. 1999)..................................................................................14

Lewis v. Triborough Bridge and Tunnel Auth.,
No. 97 Civ. 0607, 2001 WL 21256, at * 1 (S.D.N.Y. Jan. 9, 2001)......................................2

Meacham v. Knolls Atomic Power Lab.,
185 F. Supp.2d 193, 218 (N.D.N.Y. 2002)
aff'd, 381 F.3d 56 (2d Cir. 2004)
cert. granted, judgment vacated on other grounds, 544 U.S. 957 (2005).............................14

Mills v. City of Evansville, Indiana,
452 F.3d 646, 647 (7th Cir. 2006)...............................................................................14

Palmieri v. Celebrity Cruise Lines, Inc.,
No. 98 Civ. 2037, 2000 WL 310341, at *5 (S.D.N.Y. Mar. 27, 2000)...................................2

Picinich v. United Parcel Serv., Inc.,
583 F. Supp.2d 336, 340-41 (N.D.N.Y. 2008).................................................................12

Queenie, Ltd. v. Nygard Int'l,
321 F.3d 282, 295 n.1 (2d Cir. 2003).............................................................................9

Smith v. Bader,
83 F.R.D. 437, 438 (S.D.N.Y. 1979).............................................................................12

Smith v. Crown Ltd. Trucks,
No. 04 Civ. 2866 (GEL), 2007 WL 1467970, at *3 (S.D.N.Y. May 16, 2007).....................2, 3

### Federal Statutes

Fed. R. Civ. P. 42(b)...................................................................................................6

### Federal Rules

Rule 26(e)(2)............................................................................................................10

Rule 26(a)(3)............................................................................................................11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CHRISTINE C. ANDERSON,

               Plaintiff,                       07 Civ. 9599 (SAS)

     - against -

THE STATE OF NEW YORK, et al,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE

### PRELIMINARY STATEMENT

Plaintiff Christine C. Anderson, by her attorneys, Beranbaum Menken Ben-Asher & Bierman LLP, submit the herein memorandum of law in opposition to defendants' Motion in Limine.

### I.

### CORRADO'S ANTICIPATED TRIAL TESTIMONY IS PROPER

Defendants correctly observe that Nicole Corrado, a former co-worker of Anderson at the DDC, testified at her deposition about defendant Sherry Cohen's racially offensive remarks and disparate treatment of minorities. The Court in its summary judgment decision, however, dismissed plaintiff's racial and national origin discrimination claims. Therefore, notwithstanding defendants' doubts, plaintiff has absolutely no intention of having Corrado testify at the trial on matters relating to Cohen's alleged racial bias.

1

Likewise, counsel has no intention of eliciting from Corrado "personality and character attacks" on Cohen unrelated to the issues at trial. However, plaintiff properly does intend to have Corrado testify, among other things, about Cohen's harassment of Anderson. Such testimony clearly is relevant to the issue of whether Cohen and the other defendants retaliated against Anderson for her speech about DDC whitewashing.

## II.

### AS PLAINTIFF'S TREATING PHYSICIAN, DR. CARRERA MAY GIVE HIS OPINIONS ARISING OUT OF HIS TREATMENT OF PLAINTIFF, INCLUDING HIS PROGNOSIS FOR HER

Defendants characterize Dr. Carrera as an expert witness and essentially make a <u>Daubert</u> challenge in an attempt to exclude his testimony. In fact, Dr. Carrera is Anderson's treating physician and is being called to testify in that capacity, not as an expert witness. The Joint Pre-Trial Order makes this abundantly clear. It lists Dr. Carrera as "Plaintiff's Witness," and not as an "Expert Witness."[1]

Dr. Carrera, as a treating physician, "may testify about opinions formed during the course of treatment without regard to disclosure requirements of Rule 26(a)(2)." <u>Smith v. Crown Ltd. Trucks</u>, No. 04 Civ. 2866 (GEL), 2007 WL 1467970, at *3 (S.D.N.Y. May 16, 2007) (quoting <u>Lewis v. Triborough Bridge and Tunnel Auth.</u>, No. 97 Civ. 0607, 2001 WL 21256, at * 1 (S.D.N.Y. Jan. 9, 2001)); <u>see also</u> <u>Palmieri v. Celebrity Cruise Lines, Inc.</u>, No. 98 Civ. 2037,

---

[1]    Earlier in the litigation, plaintiff had identified Dr. Carrera as an expert witness and defendants objected. At a court conference, Magistrate Judge Peck cast doubt on the appropriateness of plaintiff's use of Dr. Carrera as an expert witness entitled to payment for his deposition. Plaintiff did not pursue calling Dr. Carrera as an expert witness. When defendants deposed Dr. Carrera, plaintiff did not request payment for his time as she would have done had he attended as an expert witness.

2000 WL 310341, at *5 (S.D.N.Y. Mar. 27, 2000) (collecting cases holding that a treating

physician's testimony may include opinions).

**REDACTED pursuant to Stipulation and Order of Confidentiality,**

**dated February 20, 2008.**

Defendants' position is contrary to precedential authority within this Circuit. The courts

in this Circuit have made clear that a treating physicians may give opinions relating to the

treatment of their patient, including the cause of the condition and prognosis. The district court

in Derienzo v. Metropolitan Transit Auth. and Metro-North RR, No. 01 Civ. 8138 (CBM), 2004

WL 67479, at *2 (Jan. 15, 2004), cited numerous trial court decisions in stating:

> [treating physicians] are witnesses testifying to the facts of their examination,
> diagnosis and treatment of a patient. It does not mean that the treating physicians
> do not have an opinion as to the cause of an injury based upon their examination
> of the patient or the degree of injury in the future. These opinions are a necessary
> part of the treatment of the patient. Such opinions do not make the treating
> physicians experts as defined by Rule 26(b)(2).

Although the defendants cite Smith v. Crown Lynch Trucks as authority for their position, the

district court there actually allowed the treating physician to opine, [**REDACTED**], that his

patient's prognosis was "guarded," and that he was likely to have pain for the rest of his life.

3

<u>Smith</u>, 2007 WL 1467970, at *4.

Further, defendants distort the meaning of Dr. Carrera's report.


**REDACTED pursuant to Stipulation and Order of Confidentiality,**

**dated February 20, 2008.**


A family physician is very qualified to find that his patient

engages in a reduced level of intellectual activities, such as reading or going to the opera.

### III.

### <u>RUMORS OF CAHILL AND COHEN RECEIVING PREFERENTIAL TREATMENT</u>

The crux of plaintiff's First Amendment claim is that DDC and Court officials retaliated

against her for engaging in protected speech about agency whitewashing of the public's

complaints of attorney misconduct.  Whether or not the DDC's Thomas Cahill or Cohen received

preferential treatment as a result of the whitewashing, or they arranged for a quid pro quo deal, is

irrelevant to this action and unnecessary to prove in order for plaintiff to prevail.  Plaintiff has no

intention of testifying about "rumors" of Cahill and Cohen receiving professional favors for

giving lenient treatment to wrongdoing attorneys.  Plaintiff does intend to testify, as she did at

her deposition, that Cahill, in dismissing cases, was improperly motivated by his desire to reduce

his agency's docket.  <u>See</u> Beranbaum Aff., Ex. 1, Plaintiff Dep. at 129.

## IV.

### PLAINTIFF EXERCISED PROTECTED SPEECH IN CONNECTION WITH THE "JG" INCIDENT, AND THEREFORE EVIDENCE RELATING TO THE INCIDENT IS RELEVANT AND ADMISSIBLE

The circumstances surrounding the "JG" matter are as follows: Plaintiff was assigned to investigate JG's complaint of attorney misconduct. She "uncovered overwhelming concrete evidence of misconduct on the part of the respondent." Second Am. Complaint ¶ 41. Plaintiff recommended that the respondent be brought up on charges. Her case load supervisor approved the recommendation, and referred the recommendation to DDC chief Cahill. Id. The file was then reassigned to another DDC staff attorney. Beranbaum Aff., Exhibit 1, Plaintiff Dep. at 115.

Sometime after the reassignment of "JG," Anderson made inquiries about its disposition. She learned that the complaint had been dismissed and never presented to the DDC Policy Committee for review. Second Am. Complaint ¶ 42. Anderson was shocked given that her investigation had established substantial evidence of attorney misconduct. Subsequently, Anderson reviewed the case file and found that a great deal of the evidence that she had obtained, along with memos to the file, were missing. Beranbaum Aff., Exhibit 1, Plaintiff Dep. at 113.

The following week, plaintiff reported to Cahill that the JG file "had been gutted." Id. at 122. She told Cahill:

> I said, Tom, this is extremely troubling ... it is outrageous and you haven't even heard of the things that [the respondent] did. I said the same thing again, it was becoming my mantra. I said, Tom, this cannot be allowed to happen. This should be reopened. I said this is how we screw the public. This should be reopened.

Id.

The significance of "JG" is not, as defendants suggest, whether Cahill was involved in

5

"gutting" the file. Rather, the significance of the case for purposes of Anderson's First

Amendment claim is that plaintiff expressed to Cahill that the DDC had inexplicably dismissed a

meritorious attorney misconduct complaint; the case file was gutted; and the handling of the case

exemplified how the agency was not living up to its statutory mission.

     In sum, in connection with "JG," Anderson exercised her free speech right regarding

whitewashing at the DDC, and evidence regarding the incident is clearly relevant and admissible.

**V.**

**PLAINTIFF TRANSCRIBED ALL SHORT
HAND NOTES REQUESTED OF HER**

     Regarding plaintiff's shorthand notes, defendants try to create a controversy where none

exist. Although not required to do so, plaintiff transcribed all of the short hand notes that she

was asked to do. Plaintiff has not included on her exhibit list any untranscribed short hand notes.

Should an unanticipated factual issue arise about which plaintiff wrote a short hand note that

defendants did not ask her to transcribe, there is no reason that the note cannot be used to refresh

her recollection. The issue is premature, however, since plaintiff does not anticipate introducing

or relying upon any untranscribed notes at trial.

**VI.**

**THERE ARE NO EXCEPTIONAL
CIRCUMSTANCES JUSTIFYING BIFURCATION**

     Under Fed. R. Civ. P. 42(b), the Court, in its discretion, may bifurcate the trial of an

action for "convenience or to avoid prejudice, or when separate trials will be conducive to

expedition and economy." See Dallas v. Goldberg, 143 F. Supp.2d 312, 315 (S.D.N.Y. 2001).

Although the decision to bifurcate a trial rests within the sound discretion of the trial court, it is

6

done only in exceptional circumstances, with the party seeking bifurcation bearing the burden of proving its need. Id. Factors that courts consider in determining whether bifurcation is appropriate include: 1) whether the issues are significantly different from one another; 2) whether the issues are to be tried to a jury or a court; 3) whether the posture of discovery on the issues favors a single trial or bifurcation; 4) whether the documentary and testimonial evidence on the issues overlap; and 5) whether the party opposing bifurcation will be prejudiced if it is granted. Id.

Defendants assert that this is an exceptional case justifying bifurcation of the liability and damages phases of the trial, but then are unable to present any "pressing or unusual circumstances," id., warranting bifurcation. As in Dallas, 143 F. Supp.2d at 315, where the court denied bifurcation, defendants tellingly fail to address how severing the trial would promote judicial economy. To the contrary, bifurcating the trial would cause the expenditure of unnecessary time and resources on the part of the parties and the Court, in particular prejudicing plaintiff whose resources are limited.

Further militating against bifurcation is the fact that the liability and damages phases of the trial have overlapping witnesses. First, of course, there is Anderson herself, who will testify about defendants' retaliation and the damages she suffered. Even Anderson's testimony cannot be neatly divided into separate time periods corresponding with a liability phase (during her employment) and a damages phase (after her discharge). During her employment, Anderson suffered not only actionable retaliation but also extreme emotional distress, manifested physically and psychologically. Therefore, at a damages phase of the trial, Anderson would testify about events occurring during her employment that she already had covered during the trial's liability

7

phase.

In addition to Anderson, there would be other common witnesses if the trial were severed. Anderson's co-worker, Nicole Corrado, will testify on issues relating to liability, including the DDC's practice of transferring employees (other than Anderson) who requested a change in supervisors; Anderson's work record and conduct at work; and Cohen's supervisory practices. Yet, Corrado will also testify about damages. At her deposition, Corrado testified at length about how Anderson's demeanor, mood and physique changed while enduring defendants' harassment and retaliation.

Anderson's treating physician, Dr. Carrera, also will need to testify about liability and damages matters. Dr. Carrera, as reflected in his report attached to defendants' memorandum of law, will testify about plaintiff's pain and suffering. However, Dr. Carrera would also be a central figure in any liability phase of the trial. In support of their insubordination charge, defendants claim that plaintiff feigned illness or fabricated emergent doctors visits in order to miss scheduled meetings with her supervisors. On one occasion, defendants went so far as to discipline plaintiff after she needed to re-schedule a meeting on February 6, 2007 because of illness. Defendants have indicated that they believe that Dr. Carrera wrote a note stating that Anderson was visiting his office that day to cover up Anderson's allegedly unjustified absence.[2] Dr. Carrera's testimony at any liability trial will be needed to rebut that charge.

Dallas, also a Section 1983 case, denied a request for bifurcation because "the standard of conduct necessary to establish punitive damages overlaps with Defendants' state of mind in each

---

[2]    Dr. Carrera's note that Anderson was at his office on February 6, 2007, which defendants claim is false, is listed as one of their exhibits on the Joint Pretrial Order.

of the [Section] 1983 claims, and because the same facts and witness testimony will be required to prove each of these issues." Dallas, 143 at 316 (internal quotes omitted). Accordingly, the Dallas court found, bifurcation would not serve judicial economy and would prejudice plaintiff. The same rationale applies fully to this case.

Defendants only argument to support bifurcation is "the expected highly emotional content of plaintiff's testimony." Under that rationale, however, virtually every wrongful discharge case and most personal injury cases would need to be bifurcated.[3]  Significantly more is needed for defendants to meet their burden that bifurcation is warranted.

## VII.

## BIFURCATING THE ISSUE OF THE AMOUNT OF PUNITIVE DAMAGES

Plaintiff agrees that the Second Circuit has found that a district court may properly bifurcate the issue of the amount of punitive damages to be awarded from the remainder of the trial. See Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 295 n.1 (2d Cir. 2003). However, the decision to bifurcate this issue, like bifurcation generally under Rule 42( c), is not required and is within the discretion of the trial court.

## VIII.

## THERE IS NO BASIS TO EXCLUDE PLAINTIFF'S DAMAGES WITNESS OR LIMIT HER ACTUARY'S TESTIMONY

Plaintiff intends to call her friend, Jane Welz, to testify about the impact of defendants'

---

[3]      In support of their claim that the case would have a highly emotional content, defendants note that plaintiff named Anderson's daughter, N. Xaba, as a witness on the Joint Pretrial Order.  However, plaintiff has subsequently notified defendants that she will not call Ms. Xaba as a witness.

9

retaliation and termination on her.[4]  In cases like this, involving on-the-job harassment and

wrongful discharge, it is common to have the plaintiff's friends and family members testify about

how plaintiff's activities, demeanor and mood have changed.

Plaintiff first identified Ms. Welz as a potential witness in the Joint Pretrial Order.  To

address any potential prejudice to defendants for not identifying Ms. Welz during discovery, and

at the request of defendants, plaintiff has now provided defendants with an outline of her

anticipated testimony.  Plaintiff also has agreed to permit defendants to depose Ms. Welz.

Therefore, allowing Ms. Welz to testify at the trial will not prejudice defendants and her

exclusion is unwarranted.

In July 2008, plaintiff identified Sheldon Wishnick, a forensic actuary, as her expert

witness and provided defendants a copy of his report.  At a September 4, 2009 court conference,

Magistrate Judge Peck ordered that defendants had until October 30, 2009 to depose Mr.

Wishnick.  Defendants did not depose Mr. Wishnick by that date.  On July 10, 2009, plaintiff's

submitted to defendants an updated report from Mr. Wishnick.  The changes in Mr. Wishnick's

supplemental report were limited to updating the "determination date" of the economic loss

estimate from August 1, 2008 to August 31, 2009, and updating the interest and tax

assumptions.[5]  Otherwise, there were no changes in the methodology or the data from the

previous year's report.

In updating the actuarial report to make it contemporaneous with the time of the trial,

---

[4]    As noted, plaintiff has withdrawn Anderson's daughter, Ms. N. Xaba, from the
witness list.

[5]    Mr. Wishnick's supplemental report increased plaintiff's projected economic loss
from approximately $704,000 to $750,000.

plaintiff was meeting her obligation to supplement an expert witness's report under Rule 26(e)(2)

("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to

supplement extends ... to information included in the report...")  Plaintiff provided the

supplementation more than 30 days before the trial, in satisfaction of the requirements of Rule

26(a)(3)(B).  Accordingly, there is no basis for excluding the changes to Mr. Wishnick's report.

Moreover, plaintiff's updating of her expert's report pursuant to the Rules of Court should not

give defendants a second bite of the apple to now depose Mr. Wishnick, when they chose not to

do so within the October 30, 2008 deadline.

IX.

**DEFENDANTS HAVE WAIVED THEIR REQUEST FOR**
**PLAINTIFF'S TAX RETURNS FROM EIGHT TO ELEVEN YEARS AGO**

Defendants served its First Set of Requests for the Production of Documents in or about

February 2008, seeking, among other things, plaintiff's tax returns for the period February 1,

2002 to the present, i.e. the period when she was working for the DDC and after her discharge.

See Def. Memo. of Law, Appendix C.  On March 6, 2008, plaintiff objected to the request on

grounds that defendants sought highly personal information that was not reasonably likely to lead

to the discovery of admissible evidence.  Id.  Defendants failed to move to compel the production

of the tax returns before the close of discovery.

In or about July 2008, defendants propounded its Third Set of Requests for the

Production of Documents, now asking for plaintiff's tax returns for the period 1998 to 2001, i.e.

the three-year period immediately before plaintiff started working at the DDC.  Plaintiff objected

to the request, id., and again defendants failed to make a motion to compel – that is, until its

11

current application fashioned as a motion in limine.

Defendants have unduly delayed bringing its motion to compel the production of plaintiff's 1998-2001 tax return by waiting until July 2009 to do so, one month before the trial and ten months after the September 2008 close of discovery. Accordingly, their motion is untimely and should be denied. See In re Health Management, Inc., No. CV 96-0889 (ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 25, 1999).

Even if the motion to compel Anderson's 1998-2001 tax returns were timely, it would remain without merit. The returns, so remote in time, are not relevant to the issues at trial, and their disclosure would be highly invasive of plaintiff's privacy. "Courts are reluctant to order [tax returns'] discovery in part because of the 'private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns.'" Chen v. Republic Restaurant Corp., No. 07 Civ. 3307 (LTS) (RLE), 2008 WL 793686, at * 2 (quoting Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979)). Tax returns should not be provided for discovery purposes unless they appear relevant to the subject matter. Chen, supra.

Defendants argue that Anderson failed to mitigate her damages. They claim that plaintiff could have resume her private law practice after her termination from the DDC and that the 1998-2001 tax returns would show how much she could have earned had she done so. Defendants' request is misguided because plaintiff was not obligated to re-start her private practice to satisfy her duty to mitigate. While starting one's own business might be a suitable form of mitigation, see, e.g., Collings v. Industrial Acoustics, Inc., No. 99 CIV 11875 (GEL), 2001 WL 913909, at *6 (S.D.N.Y. Aug. 13, 2001), defendants have cited no authority, and

12

counsel knows of none, holding that a victim of a wrongful discharge *must* start her own business in order to properly mitigate her damages.  Cf.  Picinich v. United Parcel Serv., Inc., 583 F. Supp.2d 336, 340-41 (N.D.N.Y. 2008) ("While some courts have found that removing oneself from the job market in order to attend school constitutes a failure to mitigate ... and other courts have concluded that pursuit of an education after a diligent search for employment does not constitute a failure to mitigate ... no court has found that one must pursue an education in order to properly mitigate.")

Moreover, the circumstances of this case show that the resumption of plaintiff's private practice was not a viable option.  By 2000, a year before she closed her practice,

**REDACTED pursuant to Stipulation and Order of Confidentiality,**

**dated February 20, 2008.**

To force plaintiff to re-embark upon an already failed enterprise as a condition to claim economic damages, of course, makes no sense.  In sum, the 1988-2001 are not relevant to the issue of mitigation and defendants' motion to compel should be denied.

## X.

### PLAINTIFF'S EXPERT SHOULD BE PERMITTED TO TESTIFY ABOUT HER FUTURE ECONOMIC LOSSES

Plaintiff agrees with defendants that in Section 1983 litigation, future damages and reinstatement are considered equitable claims to be decided by the Court.  However, it doesn't follow that, therefore, plaintiff's actuary, Mr. Wishnick, may not testify about future damages. The Court, just as much as a jury, needs to hear actuarial testimony to assist it in making an

13

appropriate award for plaintiff's future economic loss.

In addition, plaintiff respectfully requests that the Court use the already empaneled jury to render an advisory verdict on future damages, pursuant to Rule 39( c). Trying the issue of future damages to an advisory jury has been found helpful by a host of courts within this Circuit. See, e.g., Howell v. New Haven Bd. of Educ., No. 3:02CV736 (JBA), 2005 WL 2179582 (D. Conn. 2005) (modifying advisory verdict); Guidi v. Inter-Continental Hotels Corp., No. 95 Civ. 9006 (LAP), 2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003) (adopting advisory verdict); Gatti v. Community Action Agency of Green Cty., 263 F. Supp.2d 496, 511 (N.D.N.Y. 2003) (adopting); Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc., No. 00 CIV. 5207 (JCF), 2002 WL 1059117, at *10 (S.D.N.Y. May 28, 2002) (adopting); Meacham v. Knolls Atomic Power Lab., 185 F. Supp.2d 193, 218 (N.D.N.Y. 2002) (adopting), aff'd, 381 F.3d 56 (2d Cir. 2004), cert. granted, judgment vacated on other grounds, 544 U.S. 957 (2005); Hogan v. Gen'l Elec. Co., 144 F. Supp. 138 (N.D.N.Y. 2001) (adopting). Epstein v. Kalvin-Miller Int'l, Inc., No. 96 Civ. 8158 (PKL), 2000 WL 1761052, at *2 (S.D.N.Y. Nov. 29, 2000) (adopting).

## XI.

### THE COURT HAS DETERMINED THAT PLAINTIFF'S SPEECH REGARDING DDC WHITEWASHING WOULD BE PROTECTED AS A MATTER OF LAW, AND THE JURY NOW MUST DECIDE IF SHE MADE SUCH SPEECH

The issue whether a public employee's speech addresses a matter of public concern "is a question of law for the court to decide, taking into account the content, form, and context of a given speech as revealed by the whole record." Anderson v. State of New York, 614 F. Supp.2d 404, 427 (S.D.N.Y. 2009) (citing Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999)). The closely related question of whether a public employee speaks as a citizen and therefore is entitled

constitutional protection or, alternatively, whether she speaks pursuant to her job duties and is not protected, see Garcetti v. Ceballos, 547 U.S. 410, 418 (2006), is also a legal question for the court to decide.  See Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, 1202 10th Cir. 2007) (citing Mills v. City of Evansville, Indiana, 452 F.3d 646, 647 (7th Cir. 2006) ("*Garcetti* ... holds that before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen'....")

In this case, the Court in its summary judgment decision has already set the parameters for what is protected speech.  The Court held, "[b]ecause Anderson was not required to speak out about DDC whitewashing cases, she expressed her views as a private citizen, not as a public employee, under Garcetti." (Citations omitted).  Anderson, 614 F. Supp.2d 404, 428-29.  Thus, as a matter of law, Anderson's speech about the DDC whitewashing cases would be protected. At trial, the jury must make the factual determination whether, in fact, Anderson did express these views.

With respect to the Garcetti issue, defendants have proposed that the Court give the jury written interrogatories about whether plaintiff's speech was job-related.  It is respectfully submitted that written interrogatories regarding Garcetti would be inappropriate.  Written interrogatories on the Garcetti issue would unnecessarily single out that issue and likely cause the jury to question why, among all the factual issues, the Court is asking it to focus on job-relatedness.  There is an unacceptable risk that the jury will take away the mistaken impression that the Court, by giving job-relatedness undue attention, is identifying it as having greater importance than other factual issues, to the potential detriment of the plaintiff.

15

## <u>CONCLUSION</u>

For the reasons stated above, plaintiff respectfully requests that the Court deny, in substantial part, defendants' motion in limine, particularly to the extent that defendants seek a) to limit Dr. Carrera's testimony; b) to exclude evidence about "JG"; c) to bifurcate the trial; d) to exclude Jane Welz as a damages witness; e) to limit Mr. Wishnick's expert testimony about future pay and his supplemental findings, or to permit his deposition; f) to compel the production of plaintiff's 1998-2001 tax returns; and g) to issue written interrogatories regarding the issue of job relatedness under <u>Garcetti</u>.

Dated: New York, New York
      July 21, 2009

                                  BERANBAUM MENKEN
                                      BEN-ASHER & BIERMAN LLP
                                  Attorney for Plaintiffs

By:                /s/
                      John A. Beranbaum
                      80 Pine Street, 32nd Floor
                      New York, New York 10005
                      (212) 509-1616