UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTINE C. ANDERSON,

                                Plaintiff,

                                                  07 Cv. 9599 (SAS)

    -against-

THOMAS J. CAHILL, SHERRY K.
COHEN, and DAVID SPOKONY

                                Defendants.
------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR JUDGMENT AGAINST PLAINTIFF AS A MATTER OF LAW**

**A. Preliminary Statement**

      Defendants Thomas Cahill, Sherry Cohen and David Spokony submit this memorandum of law in support of their motion for judgment against plaintiff as a matter of law, pursuant to F. R. Civ. P. 50(a), where the expressed standard is whether a "reasonable jury" would have a "legally sufficient evidentiary basis" to find for plaintiff. The present motion takes as a lodestar this Court's decision granting summary judgment in part and denying same in part, Anderson v. State of New York, 614 F. Supp. 2d 404 (S.D.N.Y 2009) (hereinafter "Anderson").

      In short, the case against defendant Cahill fails because there is no evidence that he participated in or even knew of the decision to discharge plaintiff, thereby eliminating the proximate cause element for a Section 1983 claim. No valid liability claim exists against Cahill as a supervisor in that no showing was made at trial that he either participated directly in a constitutional violation, or participated in a policy or custom permitting a subordinate to engage in such behavior.

      On the basis of the evidence presented at trial, the case against defendants Spokony and Cohen fails pursuant to the doctrine of qualified immunity, where the law was not clearly established

that the speech plaintiff claims she made to these defendants was outside "her role as a principal attorney fulfilling her professional responsibilities". Anderson, at 427.

Further, this memorandum of law responds to the Court's inquiry concerning the Court's draft verdict sheet, where defendants request a modification to question 1, as expressed infra.

## B. The Evidence on Plaintiff's Speech

### 1. Plaintiff's Professional Responsibilities

Plaintiff testified at trial on direct examination that while she was not the final decision maker on which disciplinary rules the DDC should cite in admonition letters, her drafts of admonition recommendation memoranda were influential in outcomes: "...I made a recommendation and it was then accepted by Judith Stein, passed on to Thomas Cahill and then...if it was as recommendation for admonition, which is private but nevertheless it is a serious matter, it would go to the policy committee"; "It never really happened with me, but sometimes [the policy committee] would send it back for charges...." (Tr. 116-18).[1] On cross-examination, plaintiff testified that after investigating a case, her draft of an admonition recommendation would include the "specific disciplinary rules" that the respondent attorney was believed to have violated, that she would need to discuss that aspect of the recommendation with her supervisor, and that supervisors "very rarely" disagreed with her about what parts of the disciplinary rules to cite. (Tr. 193-94).

### 2. Plaintiff's Alleged Constitutionally Protected Speech

#### (a) Pertaining to Defendant Cahill

The testimony against Cahill on alleged constitutionally protected speech was in three areas. First, plaintiff testified about telling Cahill that the admonition recommendation in the "R.H." case was "wrong" because "you cannot skew a report to achieve a certain outcome". (Tr. 139-40).

---

[1] "Tr." references are to the trial transcript.

2

Second, plaintiff claimed to have brought the "L.B." matter to the attention of Cahill, involving alleged fraud on clients in an immigration practice run by an attorney not admitted in New York, recommending that restitution for clients be sought. Cahill's response was to assign the file to a DDC attorney who did not take action. Nor did Cahill take action when plaintiff complained to him about Cohen's speaking in an uncaring manner on the "L.B." matter. (Tr. 162-65). Third, plaintiff also testified about complaining to Cahill in February, 2007 about preferential treatment given by the DDC to Assistant District Attorneys, Assistant United States Attorneys, and defense counsel who had once worked at DDC. (Tr. 155-58).

### (b) Pertaining to Defendant Cohen

Alleged constitutionally protected speech was directed toward Cohen in three matters. First, in the "R.H." case, plaintiff testified to accusing Cohen of engaging in "unethical" and "wrong" conduct by taking the matter away from plaintiff and writing the admonition recommendation to achieve a "skew[ed]...outcome." (Tr. 132-34). Second, Cohen's allegedly uncaring attitude in conversation with plaintiff on the "L.B." matter was also mentioned in plaintiff's testimony. (Tr. 165-66). Third, plaintiff testified to Cohen's taking over the "D.N." matter from plaintiff to write a report eliminating a misrepresentation charge, with Cohen becoming interested after learning that D.N.'s older brother – a partner at a large law firm in which one of the committee members was also a partner – had become involved in the matter. (Tr. 166-67, 169-70).

### (c) Pertaining to Defendant Spokony

Testimony by plaintiff on speech directed to Spokony referred to his role on the mediation panel. Plaintiff's testimony on her recounting to the panel previous instances of her speech – apart from her complaint to Cahill on the July 21 and 24 incidents – pertained to her "dissatisfaction...with handling of the 'R.H.' matter". (Tr. 143).

**C. Legal Argument**

    **1. No Clearly Established Law Pointed to Plaintiff's Alleged Speech on the "R.H.", "L.B" and "D.N." Matters as Constitutionally Protected; Defendants Are Thereby Protected by Qualified Immunity**

Qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Kelsey v. County of Schoharie, 567 F.3d 54, 60-61 (2d Cir. 2009). A constitutional right is "clearly established" where "(1) the law is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right; and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Reuland v. Hynes, 460 F.3d 409, 420 (2d Cir. 2006).[2]

Where plaintiff testified of her often influential role in formulating the strength of admonition recommendations, together with the normal process of discussion within the office between attorneys and their supervisors of what disciplinary rules to cite, no clearly established law existed which pointed to constitutional protection for plaintiff's objections on the way the three specific cases ("R.H.", "L.B." and "D.N.") were being handled. The discussion was part of plaintiff's job to participate in deciding how to use prosecutorial discretion in those matters. While plaintiff testified to mentioning DDC's "mandate...to serve the public" in objecting to Cahill on the "R.H." matter (Tr. 140), that was in the context of how to charge a respondent in a particular case.

Plaintiff testified to not being a "policymaker" for the DDC, but policymaking is a broad subject as distinct from plaintiff's actual role in formulating remedies, which is what the discussions

---

[2] In Pearson v. Callahan, 555 U.S. ____, 129 S. Ct. 808, 818 (2009), the Court held that the question of qualified immunity could be decided ahead of the question whether challenged conduct was in fact constitutional.

in the three cases were about. In denying summary judgment, the Court cited plaintiff's job description, which did not include "speaking out about improper DDC practices". Anderson, at 428-29. However, the job description was not placed into evidence and at trial plaintiff acknowledged her substantial role in admonition formulation.[3] In the same opinion, the Court gave weight to plaintiff's claim that she spoke out about "systemic problems at the DDC". Id., at 428.

The testimony as it came out at trial recounted actions in three individual cases where plaintiff was playing her accustomed role as a DDC attorney, not addressing systemic issues pertaining to DDC as a whole. On these bases, plaintiff's alleged speech on the three cases is not public speech under Garcetti v. Ceballos, 547 U.S. 410 (2006), but is similar to the speech in Garcetti itself where the Court found speech critical of a prosecutorial decision not to be actionable on the basis that it was part of the employee's job. Under this authority, law which would have established plaintiff's claimed speech as actionable was not clearly established during the case events. See also Wesolowski v. Bockelmann, 2009 U.S. App. LEXIS 21658 (2d Cir. 2009)(sheriff office employee's report of prisoner abuse not actionable); Glicksman v. New York City Envtl. Control Bd., 2009 U.S. App. LEXIS 20458 (2d Cir. 2009)(refusal of administrative law judge to follow procedure on basis of alleged injustice done to respondents did not comprise actionable speech); Healy v. City of New York, 286 Fed Appx. 744, 746 (2d Cir. 2008)(complaints of corruption by City employee arising out of inventory check deemed not public speech); contrast Skehan v. Vill. of Mamaroneck, 465 F.3d 96 (2d Cir. 2006)(speech deemed actionable where former police officers identified pattern of misconduct based on race). Accordingly, qualified immunity

---

[3] Even if plaintiff's job description had been placed in evidence, it would not be decisive on the issue of public speech. Courts are to "look beyond an employee's job description"and instead examine "the duties an employee actually is expected to perform" in the course of employment. Wesolowski v. Bockelmann, 2009 U.S. App. LEXIS 21658, at *3 (2d Cir., October 2, 2009)(citing Garcetti v. Ceballos, 547 U.S. 410 (2006)).

should be applied to protect defendants in this matter, mandating dismissal of plaintiff's claims.

Because the speech which plaintiff alleges to have directed to defendants Spokony and Cohen pertained solely to the three individual cases, the First Amendment claim against such defendants should be dismissed as a matter of law. See Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999) (citing Connick v. Myers, 461 U.S. 138, 147-48 (1983)("Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record")). To afford constitutional protection to this type of exchange in which a supervised attorney may use unsupported accusatory language while discussing individual exercises of prosecutorial discretion with a supervisor, would encourage irritants in government offices detrimental to their effective operation. While such an interpretation of the First Amendment would be unwarranted in itself, in any case, it was beyond the expectation or insight of a reasonable public supervisory officer at the time of the events of this matter.

> 2. **The Case Against Defendant Cahill Should be Dismissed Where Evidence is Lacking that He Participated in the Firing Decision; Nor Does the Evidence Permit Supervisory Liability Against Cahill**

Because evidence was lacking at trial that defendant Cahill participated or even knew of the decision to terminate plaintiff, the requirement under Section 1983 that Cahill have caused or been a part of the alleged unconstitutional act cannot be satisfied. Anderson, at 429 (requirement of "causal connection between the speech and adverse employment action"); Skehan, 465 F.3d at 108 (requirement that defendant "personally participated in alleged constitutional violation").

On the elements for supervisory liability which the Court will charge, consonant with the opinion in Bellamy v. Mount Vernon Hosp., 2009 U.S. Dist. LEXIS 54141 (S.D.N.Y. 2009), defendant Cahill cannot be liable based on the evidence at trial. Evidence is lacking that he

participated in the constitutional violation, here plaintiff's discharge, and he denied having any participation. Further, there is no evidence of a "policy or custom under which constitutional practices occurred". No evidence was presented that Cahill participated in other action adverse to employees on the basis of their speech. At most, plaintiff has alleged that the DDC under Cahill's direction engaged in selective prosecutions of attorneys by treating some favored people lightly, a practice which even if true would not comprise a constitutional violation. See Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2003) and authority cited therein (requiring an actual showing of unequal treatment, invidiousness or maliciousness). Here, plaintiff presented no evidence to make such a showing.

Mindful that the Court has ruled that the kind of speech on systemic practices allegedly made by plaintiff to Cahill in February, 2007 as recounted above could be actionable, defendants preserve their argument made in their summary judgment motion that the kind of broad brush comments plaintiff claims to have made – which did not include specification to alert Cahill to particular instances of alleged favoritism – comprises speech on approaches to prosecutorial discretion which plaintiff's job encompassed. See Anderson, at 427.

**D. The Court's Draft Jury Verdict Sheet**

Consistent with their position that to be actionable, plaintiff's speech as alleged at trial needed to express "systemic" or a "pattern" of improper practices, see Legal Argument, Point 1 supra., defendants would object to question 1 of the verdict sheet as presently drafted for excluding such terminology.

Defendants also object to inclusion of proposed question 6 in the jury verdict form, on the basis that a supervisory liability case against defendant Cahill has not been made.

Defendants have preserved their request that the instructions defining First Amendment

speech at pages 17 and 18 of the jury charge, contain reference to the need for the speech to have included reference to "systemic" or a pattern of improper "practices". Also preserved is defendants' objection to the "liability of supervisors" section of the jury charge at page 22.

## Conclusion

Defendants' motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) should be granted.

Dated: New York, New York
       October 26, 2009

>                      Respectfully submitted,
>
>                      ANDREW M. CUOMO
>                      Attorney General for the State of New York
>                      Attorney for Defendants
>                      By:
>
>                      _____/s/_____
>                      LEE ALAN ADLERSTEIN
>                      Assistant Attorney General
>                      120 Broadway - 24th Floor
>                      New York, New York 10271
>                      Tel. (212) 416-6035
>                      Fac. (212) 416-6075

LEE ALAN ADLERSTEIN
WESLEY E. BAUMAN
Assistant Attorneys General
 of Counsel