UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
CHRISTINE ANDERSON

                Plaintiff,

      -against-

THE STATE OF NEW YORK, et al.,

                Defendants.

------------------------------------------------------x

07 Civ 9599 (SAS)

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION
FOR JUDGMENT AS A MATTER OF LAW**

Preliminary Statement

Plaintiff submits this memorandum of law in opposition to Defendants' motion for judgment as a matter of law.

With respect to Defendant Cahill, and contrary to movants' bald assertion (Memorandum at 1)[1], there is considerable evidence that he actively and intentionally participated in the conduct which proximately lead to Plaintiff's termination. Moreover, it is beyond dispute that Cahill established a DDC policy which lead to that termination as well.

Plaintiff personally expressed to Cahill her concerns regarding the DDC's inexplicable failure to exercise its jurisdiction in the LB case. She expressed harsh criticism to Cahill (and to Cohen) regarding the failure of the DDC to take a proactive role in pursuing complaints with respect to LB as a result of which the opportunity for restitution from him to his complainants was lost. Plaintiff confronted Cahill with respect to the circumstance that former DDC staff attorneys roamed at will throughout the DDC office. Plaintiff personally confronted Cahill about the DDC's consistent coddling of ADA's, AUSA's

---

[1] Rather than treat Plaintiff's protected speech in a separate point, as do movants, it is set forth in the preliminary statement since movants do the same. Indeed movants' argument (Memorandum at 2-3) concerning Cahill is at best superficial.

(through written questioning as opposed to depositions), politically connected Respondents, and Respondents who were represented by attorneys formerly employed by the DDC. Plaintiff also confronted Cahill regarding Cohen's assaultive behavior and made it clear to him that she was fearful of working with Cohen[2]. Plaintiff also complained to Cahill that Cohen should not have been permitted by him to evaluate Plaintiff's job performance. And she expressed concern with respect to the Spokony "counseling" session. Plaintiff thus repeatedly requested (Exhibits 40-41) that she be reassigned to a different supervisor. Cahill refused to do so despite the fact that he had unfettered authority to do so.

Against this background - - and as made clear by Cohen in her direct testimony - - Cohen had herself divided DDC supervisory responsibilities with regard to the work product of subordinate attorneys amongst three different persons: Cahill, Bratton and Cohen. In short, Cahill full well appreciated that reassigning Plaintiff to either himself or Bratton for purposes of daily (as opposed to quarterly case management conferences ) supervision would hardly work a change in DDC policy. On the other hand, it would have facilitated Plaintiff's productivity without fear.

In short, Cahill's decision to reject Plaintiff's pleas for reassignment and insistence that the supervisor/supervisee relationship between Cohen and Plaintiff be rehabilitated, as the office policymaker, manifestly was calculated to leave her subject to Cohen's retaliation and, *inter alia*, retaliatory micro-managing about which Plaintiff expressly complained to Cahill (Exhibit 81, Bates stamped page 2348). Indeed the suggestion made by Wolfe, Spokony, and *inter alia* Cahill to the effect that by reason of Cohen's status as First Deputy she of necessity had to indulge in hands-on, daily supervision of Plaintiff was simply a pretext used to keep Plaintiff pinioned under Cohen's thumb.

Given these irrefutable facts, no particular degree of insight is required to appreciate that the finder of fact could reasonably infer that Cahill's conduct was intentionally and knowingly engaged in to facilitate establishment of the paper trail recommended by Wolfe to Cohen, established by Cohen, and

---

[2] While movants claimed that they did not believe Plaintiff's expressions of fear, her testimony regarding this matter remains uncontradicted in key respects. When working into the evening hours Plaintiff arranged to be informed if Cohen was also working in the building and if she was, Plaintiff locked her office door. Plaintiff also refused to ride the elevator with Cohen following the assault.

2

relied upon by Spokony as a predicate to urge Plaintiff's termination of employment. Indeed we submit that no contrary inference is reasonable on this record.[3]

As to movants' argument (Memorandum at 1-2) that Spokony and Cohen are entitled to qualified immunity, we disagree for the reasons set forth *infra*.

### POINT I

### MOVANTS' ARGUMENT AS TO "Plaintiff's Professional Responsibilities IS IRRELEVANT AND MISLEADING

At page 2 of movants' memorandum of law it is argued in the abstract that as a DDC attorney Plaintiff cited disciplinary rules in her admonition recommendations, and that she would from time to time discuss with her case supervisor that aspect of her recommendations. Those circumstances of course have nothing to do with Plaintiff's responsibilities with DDC corruption.

Plaintiff testified that she was required as part of her job to review, in cases referred to her, complaints regarding Respondents and in that connection to make recommendations. She also testified that it was **not** her responsibility and/or job to investigate and/or express criticism of internal DDC white washing, sanitizing, and/or skewing of cases.

Defendants offered not a scintilla of evidence to the contrary, a circumstance which leads inexorably to the conclusion that when Plaintiff spoke out with respect to the skewing of cases, the coddling of ADA's and AUSA's, the politically connected, Respondents with former DDC counsel, and the manipulation of "facts" to achieve a desired outcome each of the individually named Defendants clearly understood that it was not Plaintiff's job to do so. Put differently, none of them can take refuge in Garcetti because unlike the Plaintiff in that case - - who stipulated that what he reported to his supervisors

---

[3] The paper trail as established ultimately was intended to lead to Plaintiff's termination for some sort of supposed insubordinate activity as relates to a supervisor with whom Plaintiff had irreconcilable differences - - caused by the supervisor and not by the Plaintiff - - and exacerbated by Cahill. Cahill's unreasonable refusal of Plaintiff's reasonable request to be reassigned, must have been understood by him to lead to only one result, termination of Plaintiff's employment.

3

he was required by his job to report - - Christine Anderson had no such obligation and/or job responsibility.

## POINT II

### PLAINTIFF'S PROTECTED SPEECH AS TO COHEN

According to Cohen's testimony before the mediation panel, which is ignored by movants, Plaintiff accused her of white washing the RH case. In that connection as conceded by movants (Memorandum at 3) Plaintiff specifically alleged that Cohen's conduct was unethical and wrong because when she re-wrote the RH recommendation she did so to achieve a "skew[ed]...outcome". Anderson thus advised Cohen that deletion of the misrepresentation charge constituted sanitizing of the case file to prevent the Policy Committee from directing that charges be preferred. Indeed, Cohen admitted that white washing was raised by Plaintiff in connection with another case.

Anderson's testimony regarding Cohen in connection with the LB matter was not, as movants urge, concerning Cohen's "uncaring attitude". Rather she vigorously advocated both to Cohen and Cahill that the DDC failed to serve the public by ignoring its own jurisdiction over a New Jersey attorney with a New York office. Her criticism thus turned on the DDC's abdication of its responsibilities to the public which resulted in the Respondent avoiding reimbursement of the clients from whom he stole. In that connection, Cohen's "What do you care" comment was uttered. Evidence established that former DDC Chief Counsel Hal Lieberman had represented LB.

As to the DN case, Plaintiff's expression of concern was similar to that in the RH case - - favoring a Respondent whose brother and whose brother's law firm was connected to the DDC's Policy Committee, and re-writing Plaintiff's analysis to delete an accusation of misrepresentation - - thereby deceiving the Policy Committee. In short, this was another "skewing" of a case to realize an inappropriate white wash. In addition one (McShea) if not two (Scalise) former DDC attorneys represented DN at one point or another.

4

POINT III

PLAINTIFF'S PROTECED
SPEECH AS TO SPOKONY

As indicated *supra* according to Cohen's mediation testimony she acknowledged that Plaintiff accused her of white washing the RH case. Plaintiff, using different terminology, in substance reiterated that complaint to the mediation panel. Indeed Spokony rendered a report (Exhibit 30) in which he specifically referenced white washing and Plaintiff's complaint that doing so was both previously unheard of at the DDC and improperly intended to achieve a particular outcome.

POINT IV

QUALIFIED IMMUNITY IS
NOT A DEFENSE

Movants concede (Memorandum at 4) that qualified immunity is not available as a defense in connection with a government actor's discretionary conduct where that conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. They further concede that the law is clearly established for purposes of an immunity analysis when: the law has been defined; the Supreme Court and/or Second Circuit have recognized the right; and a reasonable defendant would have understood that his conduct was illegal.

Upon that legal premise movants urge (*id.* at 4) that because Plaintiff routinely participated in a "normal process of discussion" regarding the drafting of admonitions her allegations of white washing, skewing cases to pre-ordain a specific outcome, and purposefully omitting facts which the Policy Committee should be told do not constitute protected speech. Or as movants baldly assert, "no clearly established law existed which pointed to constitutional protection for plaintiff's objections". We disagree.

There is no question but that Plaintiff repeatedly expressed concern that cases were being white washed, sanitized, and/or skewed by Cohen to achieve an improper albeit pre-determined result. Moreover, as Plaintiff put it (to Cohen and Cahill) that conduct was "unprecedented" at the DDC and - -

was referred to in Spokony's memorandum as "unheard of". In sum, contrary to movants' bald assertion Plaintiff's expression of concern was not "part of plaintiff's job to participate in deciding how to use prosecutorial discretion" (Memorandum at 4). In fact Plaintiff, without contradiction, testified that the type of matters about which she expressed concerns were outside the scope and/or duties of her job; not one of the Defendants or defense witnesses testified to the contrary.

Meritless is movants' assertion that Plaintiff's speech is not protected by reason of Garcetti. As a threshold matter, the record facts establish that Plaintiff's expression of concerns about internal corruption at the DDC was not part of her job. Indeed, in Garcetti the alleged speech at issue concededly was required by reason of the job duties of the Deputy Assistant District Attorney. Presumably for that very reason this Court held, in denying in part Defendants' summary judgment motion:

> "Where a public employee's speech concerns a government agency's breach of the public trust, as it does here, the speech relates to more than a mere personal grievance and therefore falls outside Garcetti's restrictions".

Seen in context, Plaintiff's expressions of concern about white washing cases by Cohen not only related to the DDC's breach of the public trust, but Anderson repeatedly said precisely that. So too her expressions of concern about soft-peddling accusations against ADA's, AUSA's, the politically connected and those with former DDC counsel representing them, not only go to systemic problems with the DDC but also breaches of the public trust.[4] Such expressions of concern were not grievances personal to the Plaintiff but were aimed at system wide problems that existed at the DDC.

Under the circumstances the case law cited by movants hardly carries the day. For instance Healy v. City of New York, 286 Fed. Appx. 774, 776 (2d Cir. 2008) cuts against movants. For in that case it was "undisputed that Healy's inventory check was performed as part of his official duties"; Garcetti was thus applicable. In Glicksman v. New York City Environmental Control Board, 2009 WL 2959566 (2d. Cir,

---

[4] While movants seem to believe that Cahill's denial of knowledge about anything exonerates him from culpability, we submit that given his policymaker role in the DDC, his oversight obligations with respect to Plaintiff, Cohen and the entire DDC staff, the jury can reasonably infer that he was privy to all of Plaintiff's concerns, those expressed to him directly and to others under his control and clearly understood what Cohen with Spokony's help - - at the suggestion of Wolfe - - was engineering by way of a pretext for Plaintiff's termination.

2009) the question presented had nothing whatsoever to do with the issues at bar. There the Plaintiff urged that protected speech results from an employee's refusal to undertake wrongful conduct as directed by a supervisor. In the case at bar, by way of contrast, Plaintiff urges that her criticism of her supervisor for essentially fixing cases comprises protected speech. Weslowski v. Bockelmann, also cited by movants (Memorandum at 5) hardly advances analysis. The fact that a sheriff's office employee is required to report prisoner abuse as part of his job responsibilities, is obviously speech covered by Garcetti.

No less pertinent is movants' purported shorthand analysis of Skehan v. Village of Mamaroneck, 465 F.3d 96 (2d Cir. 2006). According to movants that case supposedly pertained to speech "deemed actionable where former police officers identified pattern of misconduct based on race". We disagree and submit that this Court's consideration of the Skehan case in its decision denying in part summary judgment was accurate: "Plaintiff's speech plainly concerned issues of public concern: misfeasance within the police department and allegations of an ongoing cover-up and an attempt to silence those who spoke out against it".

So too Ms. Anderson's speech in the case at bar pertained to misfeasance within the DDC, assertions of an ongoing cover-up and an attempt to silence Plaintiff for speaking out against it.

With respect to movants' assertion (Memorandum at 6), that "[t]o afford constitutional protection to this type of exchange [Plaintiff's allegations of white washing, sanitizing, and/or skewing cases to pre-ordain an improper result] in which a supervised attorney may use unsupported accusatory language. . .would encourage irritants in government offices detrimental to their effective operation", precious little need be said. First, Plaintiff's expressions of concern were not "unsupported"; she heard and saw what Cohen did by way of unprecedented misconduct and spoke out about it. And her expressions of concern were multiple-case specific as well as specific to certain groups or classes of persons without regard to particular cases.

7

## POINT V

## THE CASE AGAINST CAHILL
## SHOULD BE DECIDED BY THE JURY

Cahill admittedly was the ultimate policy maker for the DDC's staff attorneys. Cahill concededly was responsible for the day to day operation of the DDC. Cahill admittedly was in charge of the DDC and bore responsibility for every subordinate staff member's conduct.

In that connection he incredibly claimed that he did not recall Plaintiff's expression of concern regarding ADA's.[5] He incredibly claimed he did not recall Plaintiff's expression of concerns regarding AUSA's. He incredibly claimed he did not recall Plaintiff's expression of concern regarding politically connected Respondents. He also incredibly claimed that he did not recall Plaintiff's expression of concern regarding Respondents who lawyered up with former DDC counsel. In that connection he further conclusorily denied violating Plaintiff's First Amendment rights and professed complete ignorance about the paper trail created by Cohen which lead to Plaintiff's termination - - even though it was obvious that his refusal to re-assign Plaintiff to a different supervisor under the circumstances made possible Cohen's retaliatory memo warfare in 2007 after she admittedly learned in the Spring of 2006 (Tr. 602) that the "Court" had advised her that if things did not change as between her and Plaintiff, Plaintiff was going to be terminated.[6]

To the extent movants argue (Memorandum at 6) that there is no evidence that Cahill participated in the constitutional violation, we also disagree. Knowing that hands-on supervision of subordinate attorney's work product was divided up amongst three supervisors (Cahill, Bratton and Cohen) he (Cahill)

---

[5] According to Spokony his role with respect to Cohen and Plaintiff substantially ended after he rendered his report - - until at Cohen's request he counseled Plaintiff in February of 2007. If that is true, then Cahill alone was overseeing the DDC operation for months, yet claims to have managed to maintain complete ignorance about what Cohen was doing, her paper war with Plaintiff, and the self-evident effect his own refusal to reassign Plaintiff was of necessity having on Plaintiff.
[6] Is the jury supposed to believe that Cohen had this critical knowledge in the Spring of 2006 and never told her direct supervisor? We doubt it.

8

personally forbade Plaintiff's reassignment and personally decided in that connection to leave Cohen at unconstrained liberty to micro-manage Plaintiff and set her up through a paper trail.[7]

Movants' assertion (Memorandum at 7) that there is no evidence of a policy under which the constitutional violation occurred is lacking in merit. Cahill, as the DDC policymaker, determined that Plaintiff would not be reassigned for purposes of supervision. He thus obviously set the stage for and facilitated Cohen's retaliation which lead directly to Plaintiff's termination, as foretold in one of Plaintiff's memos dated November 2, 2006 (Exhibit 48).

## POINT VI

### THE VERDICT SHEET SHOULD NOT BE ALTERED

For the very clear reasons articulated in Skehan, *supra*, for speech to be First Amendment protected there is no requirement that the speaker express his/her concerns in terms of "systemic" and/or "patterns" of behavior. As noted in Konits v. Valley Stream Central High School District, 394 F.3d 121, 126 (2d Cir. 2005) the Second Circuit concluded that a teacher's expressions of concern were protected by the First Amendment because they were not uttered to redress personal grievances but rather were articulated to assist a co-worker advance his claims of workplace discrimination, a matter of public concern. In the case at bar it is self-evident that Plaintiff's criticisms of the DDC were not advanced as a personal grievance, but rather comprised an effort to compel the DDC to fulfill its obligations to the public and to honestly evaluate complaints - - rather than white washing them, sanitizing them, deceiving by omission of facts the Policy Committee, and otherwise eviscerating the DDC's mission. Question 1 in the draft jury verdict sheet should not, under the circumstances, be changed.

---

[7] According to the testimony of Ms. Wolfe, Bratton was not a competent supervisor and was not supposed to be supervising anyone. Obviously Cohen and Cahill concealed from the Court Clerk the reality of supervisory work in the DDC as a pretext to keep Plaintiff locked in subject to Cohen's retaliatory supervision.

9

## Conclusion

Defendants' motion should in all respects be denied. Indeed, in the interests of judicial economy there appears to be no valid reason not to permit the jury to deliberate. For should dismissal at this juncture prove to be improvident, the matter would have to be completely retried.

Dated: Hawthorne, N.Y.
       October 27, 2009

                                    LOVETT & BELLANTONI, LLP
                                    By: _____
                                    Jonathan Lovett, Esq.
                                    Attorneys for Plaintiff
                                    37A Saw Mill River Road
                                    Hawthorne, NY 10532
                                    Phone: 914-347-4500
                                    Fax: 914-347-4545

# LOVETT & BELLANTONI, LLP

37A Saw Mill River Road
Hawthorne, New York 10532
(914) 347-4500     fax (914) 347-4545

Jonathan Lovett, Esq.

Rory J. Bellantoni, Esq.
Former Acting Supreme Court Justice, NYS

Drita Nicaj, Esq.

Amy L. Bellantoni, Esq.

October 27, 2009

**Via Fax: 212-805-7920**

Hon. Shira A. Sheindlin
United States District Judge
United States Courthouse, Room 1620
500 Pearl Street
New York, N.Y. 10007

    Re: <u>Anderson v. State of New York</u>, 07 Civ. 9599 (SAS)

Dear Judge Sheindlin:

    Under cover of this letter we are submitting our memorandum of law in opposition to Defendants' motion for judgment as a matter of law.

Respectfully,

Jonathan Lovett (4854)

JL:clp
Cc: Les Adlerstein, via fax: 212-416-6075

\* \* \* Communication Result Report ( Oct. 27. 2009 6:47PM ) \* \* \*

Date/Time: Oct. 27. 2009  6:46PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 1510 | Memory TX | 12124166075 | P. 11 | OK | |

Reason for error
 E. 1) Hang up or line fail      E. 2) Busy
 E. 3) No answer                 E. 4) No facsimile connection
 E. 5) Exceeded max. E-mail size

---

**LOVETT & BELLANTONI, LLP**
37A Saw Mill River Road
Hawthorne, New York 10532
(914) 347-4300   fax (914) 347-4343

Jonathan Lovett, Esq.                                       Barry J. Bellantoni, Esq.
                                                            Former Acting Supreme Court Justice, NYS

Drita Nicaj, Esq.                                           Amy L. Bellantoni, Esq.

October 27, 2009

Via Fax: 212-805-7920

Hon. Shira A. Scheindlin
United States District Judge
United States Courthouse, Room 1620
500 Pearl Street
New York, N.Y. 10007

  Re: Anderson v. State of New York, 07 Civ. 9599 (SAS)

Dear Judge Scheindlin:

   Under cover of this letter we are submitting our memorandum of law in opposition to Defendants' motion for judgment as a matter of law.

                                                Respectfully,
                                                Jonathan Lovett (4854)

JL:clp
Cc: Lee Adlerstein, via fax: 212-416-6075

\* \* \* Communication Result Report ( Oct. 27. 2009  6:45PM ) \* \* \*

Date/Time: Oct. 27. 2009  6:43PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 1509 | Memory TX | 12128057920 | P. 11 | OK | |

Reason for error
 E. 1) Hang up or line fail           E. 2) Busy
 E. 3) No answer                      E. 4) No facsimile connection
 E. 5) Exceeded max. E-mail size

---

**LOVETT & BELLANTONI, LLP**
37A Saw Mill River Road
Hawthorne, New York 10532
(914) 347-4500    fax (914) 347-4545

Jonathan Lovett, Esq.                    Rory J. Bellantoni, Esq.
                                          Former Acting Supreme Court Justice, NYS

Drita Nicaj, Esq.                        Amy L. Bellantoni, Esq.

October 27, 2009

Via Fax: 212-805-7920

Hon. Shira A. Scheindlin
United States District Judge
United States Courthouse, Room 1620
500 Pearl Street
New York, N.Y. 10007

  Re: Anderson v. State of New York, 07 Civ 9599 (SAS)

Dear Judge Scheindlin:

  Under cover of this letter we are submitting our memorandum of law in opposition to Defendants' motion for judgment as a matter of law.

Respectfully,

Jonathan Lovett (4854)

JL:clp
Cc: Les Adlerstein, via fax: 212-416-6075

\* \* \* Communication Result Report ( Oct. 27. 2009 6:49PM ) \* \* \*

Date/Time: Oct. 27. 2009 6:48PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 1511 | Memory TX | 12124166009 | P. 11 | OK | |

Reason for error
 E. 1) Hang up or line fail                E. 2) Busy
 E. 3) No answer                           E. 4) No facsimile connection
 E. 5) Exceeded max. E-mail size

---

## LOVETT & BELLANTONI, LLP

37A Saw Mill River Road
Hawthorne, New York 10532
(914) 347-4500   fax (914) 347-4545

Jonathan Lovett, Esq.                                          Lucy J. Bellantoni, Esq.
                                                               Former Acting Supreme Court Justice, NYS

Drita Nicaj, Esq.                                              Amy L. Bellantoni, Esq.

                                                October 27, 2009

Via Fax: 212-805-7920

Hon. Shira A. Sheindlin
United States District Judge
United States Courthouse, Room 1620
500 Pearl Street
New York, N.Y. 10007

        Re: Anderson v. State of New York, 07 Civ. 9599 (SAS)

Dear Judge Sheindlin:

        Under cover of this letter we are submitting our memorandum of law in opposition to
Defendants' motion for judgment as a matter of law.

                                                Respectfully,

                                                Jonathan Lovett (4854)

JL:dp
Cc: Lee Adlerstein, via fax: 212-416-6075



**STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
ANDREW M. CUOMO
ATTORNEY GENERAL
120 BROADWAY, 24th Fl., NEW YORK, N.Y. 10271-0332
FACSIMILE TRANSMISSION**

TO: 1. Honorable Shira A. Scheindlin     212-805-7920

       2. Jonathan Lovett, Esq.            914-347-4545

FROM: Lee Adlerstein
ASSISTANT ATTORNEY GENERAL
212-416-6035 (Direct)
212-416-6009 (Fax)

DATE: October 26, 2009        NUMBER OF PAGES: 10
                                                        (INCLUDING THIS PAGE)

RE: <u>Anderson v. The State of New York, et. al.</u>, 07 CV. 9599 (SAS)

**CONFIDENTIAL**
THE INFORMATION CONTAINED IN THIS FACSIMILE IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS IS STRICTLY PROHIBITED.