UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

CHRISTINE C. ANDERSON,

          Plaintiff,

   - against -

THE STATE OF NEW YORK, THE
OFFICE OF COURT ADMINISTRATION
OF THE UNIFIED COURT SYSTEM,
THOMAS J. CAHILL, in his official and
individual capacity, SHERRY K. COHEN,
in her official and individual capacity, and
DAVID SPOKONY, in his official and
individual capacity,

          Defendants.
------------------------------------------------------X

**OPINION AND ORDER**

**07 Civ. 9599 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

        Plaintiff Christine C. Anderson, proceeding pro se, moves to re-open

her case pursuant to Federal Rule of Civil Procedure ("Rule") 60(b) and (d)(3).[1]

Plaintiff seeks a new trial on the grounds of newly discovered evidence consisting

---

[1]    *See* 6/25/12 Notice of Motion and accompanying Affirmation of
Christine C. Anderson in Support of Motion to Reopen ("Anderson Aff.") ¶ 4.
Plaintiff does not specify the particular provision of Rule 60(b) on which she is
relying. Because plaintiff characterizes her claims as "newly-discovered evidence
from the Corrado case," *id.* at ¶ 8, they fall under the purview of Rule 60(b)(2).
*See Madonna v. United States*, 878 F.2d 62, 64 (2d Cir. 1989) (stating that Rule
60(b)(2) motion is properly based on new evidence of fraud or mistake discovered
after trial).

of a federal lawsuit filed by Nicole Corrado in the Eastern District of New York[2]

and fraud.  Plaintiff alleges that this newly discovered evidence corroborates the

fact that Corrado was threatened into not testifying at plaintiff's trial.[3]  For the

following reasons, plaintiff's motion is denied.

## I.    BACKGROUND

### A.    Anderson's Case

Represented by counsel, Anderson brought suit against defendants

pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 (" Title VII"),  42

U.S.C. § 1981 (" section 1981"), 42 U.S.C. § 1983 ("section 1983"), New York

State Executive Law § 296, and state common law.  Plaintiff alleged, under both

federal and state law, that she was unlawfully terminated and subjected to a hostile

work environment because of her race (African American), color (black), and

national origin (Jamaican).  Plaintiff further claimed that defendants: deprived her

of the right to make and enforce contracts; unlawfully retaliated against her for

having exercised her constitutional right to free speech; violated her Fourteenth

---

[2]      *Corrado v. New York State Unified Court System*, 12 CV 1748 (E.D.N.Y. Apr. 10, 2012) ("Corrado Compaint"), Ex. A to the Anderson Aff.

[3]      *See* Anderson Aff. ¶ 4.  *See also id.* ¶ 8 ("This newly-discovered evidence from the *Corrado case*, only filed April 10, 2012, clearly shows that plaintiff's witness, attorney Nicole Corrado, was threatened and chilled into ***not*** testifying at plaintiff's trial – a manifest attack on our system of law and a clear denial of plaintiff's right to a fair trial.") (emphasis in original).

Amendment rights to due process and equal protection by discriminating against her; and that the public entity defendants breached a state collective bargaining agreement.

On April 27, 2009, this Court issued an Opinion and Order granting partial summary judgment to defendants.[4]  In that Order, plaintiff's claims of discrimination based on race, color and national origin were dismissed.  Claims based on the following were also dismissed: section 1981, due process, equal protection, and state law including breach of contract.[5]  Plaintiff was left with a single First Amendment retaliation claim against Thomas J. Cahill, Sherry K. Cohen, and David Spokony (the "individual defendants") in their individual capacities.[6]  The gravamen of plaintiff's retaliation claim was that the individual defendants, all of whom worked at the Departmental Disciplinary Committee of the Appellate Division, First Department, New York State Supreme Court ("DDC"), retaliated against her for exercising her constitutional right to free speech.  Plaintiff claimed that the individual defendants retaliated against her because she reported acts of misconduct and corruption by the DDC, otherwise

---

[4]     *Anderson v. State of New York, Office of Court Admin. of Unified Court Sys.*, 614 F. Supp. 2d 404 (S.D.N.Y. 2009).

[5]     *See id.* at 432-33.

[6]     *See id.* at 433.

know as "whitewashing."[7]  In particular, Anderson complained that "the DDC

favored certain well-connected respondents and attorneys through lenient treatment

otherwise known as 'whitewashing,' and that such whitewashing tarnished the

mission of the DDC."[8]  Because I found a disputed issue of material fact,

defendants' summary judgment motion seeking to dismiss plaintiff's First

Amendment retaliation claim was denied.[9]

   A jury trial was held in October 2009.  Corrado was listed as a witness

for plaintiff in the Joint Pretrial Order but she was not called as a witness at trial.

---

[7]   In her Second Amended Complaint, Anderson alleged that she

   was targeted for harassment and abuse, and was retaliated against, after she discovered and reported acts of misconduct and corruption within the DDC, which constituted an abuse of the power and a fraud upon the public. The conduct and actions of defendants in retaliating against Plaintiff and subjecting her to a hostile work environment, culminating in the constructive demotion and termination of her position and employment, were wrongful, oppressive and unlawfully taken in retaliation against her for having exercised her Constitutional Right of Free Speech as a private citizen regarding matters of public concern to the community.

Second Amended Complaint ¶ 101.

[8]   *Anderson*, 614 F. Supp. 2d at 410.

[9]   *See id.* at 430 ("There is, therefore, a material question of fact as to whether plaintiff has shown a causal connection between her protected speech and her discharge.").

Nor was there any discussion about her testifying at trial.  On October 29, 2009, the jury returned a verdict for the defendants and judgment was entered the next day.  Plaintiff appealed the judgment on November 25, 2009.  On April 4, 2011, the Second Circuit affirmed the jury's verdict.[10]

### B.    The Corrado Complaint

Plaintiff now argues that there is new evidence that Corrado, a DDC employee, was threatened as a witness in connection with plaintiff's action.[11]  The allegedly new evidence consists of the following four paragraphs in Corrado's Complaint:

> 27.    In or around June of 2008, Defendant learned Plaintiff [Corrado] would be testifying as a non-party witness in a civil action against Defendant which alleged racial discrimination and other improper conduct on the part of Defendant and its supervisors.

> 28.    In or around June of 2008, in retaliation for Plaintiff agreeing to provide corroborating testimony in the aforementioned discrimination suit, Alan Friedberg, the Division Chief, began closely monitoring

---

[10]    *See Anderson v. Cahill*, 417 Fed. App'x 92 (2d Cir. 2011).

[11]    *See* Anderson Aff. ¶ 4 ("Ms. Corrado was so chilled by the deliberate witness tampering that she did not testify in plaintiff's district court trial.").  *See also id.* ¶ 6 ("This Court must insure that any plaintiff such as myself can have a fair trial without witness tampering or such threats upon witnesses so as to prevent their testimony for the court or jury.  Corrado's recent filing in the Eastern District fully supports the fact that the defendants acted improperly so [as] to defraud the Honorable Court and plaintiff.").

Plaintiff's conduct and writing memos reflecting negative comments concerning Plaintiff's productivity and work practices in her file, while not disclosing said memos to Plaintiff.

29.   In or around August 2008, approximately two days prior to Plaintiff testifying in the discrimination case against Defendant, Bratton [Plaintiff's supervisor] approached Plaintiff in her office and informed her that in 2007, as a result of her rejecting him, he admitted himself into the psychiatric ward at St. Vincent's hospital for "severe depression and suicidal tendencies" and that he was warning her accordingly.  When Plaintiff asked Bratton what he meant, Bratton stated in response, "I am just warning you" while staring intensely at the Plaintiff.

30.   On or around August 21, 2008, Plaintiff gave testimony against Defendant in the discrimination lawsuit.[12]

In fact, Corrado was deposed by plaintiff's attorney on August 21, 2008, approximately fourteen months before the trial.[13]  During her deposition, Corrado referred to a former supervisor, Sherry Cohen, as:  arrogant, ill motivated, dictatorial, difficult, combative, confrontational, racially insensitive and very hostile.[14]  Corrado also testified that Cohen had poor management skills, engaged

---

[12]   Corrado Complaint ¶¶ 27-30.

[13]   *See* Transcript of 8/21/08 Deposition of Nicole Corrado, Ex. A to the Declaration of John Knudsen, Assistant Attorney General ("Knudsen Decl.").

[14]   *See id.* at 19, 22, 25, 27, 30.

in religious discrimination, and was a racist and sexist.[15]  In fact, Corrado stated

that it was her belief that Cohen's mistreatment of plaintiff was related to

plaintiff's race.[16]  When asked how she felt about being deposed, Corrado stated:

> I'm definitely – I've been feeling a lot of stress and concern
> for different reasons.  Obviously, Mr. Friedberg and other
> members of my office, they know that I was, you know,
> subpoenaed to appear.  But it's very difficult, it's stressful.
> . . .  I've been getting, you know, strange sort of treatment
> from [Cohen] since she learned that I was going to be a
> witness.  It's been very uncomfortable for me.[17]

Corrado further testified: "But I still think it's important to, obviously, tell you

these things, and so I am, regardless of these feelings."[18]

### C.    The Letter Exchange and Court Conference

Anderson's attorney, John Beranbaum, sent a letter to this Court

which states, in relevant part:

> I am writing regarding a sensitive matter concerning
> possible witness tampering.  I previously advised the
> opposing counsel of this matter.  As you know, Ms.
> Anderson is suing the State of New York for her wrongful
> termination as an attorney with the First Judicial
> Department's  Departmental  Disciplinary  Committee

---

[15]    *See id.* at 33, 57, 61, 71, 74.

[16]    *See id.* at 95-96.

[17]    *Id.* at 96-97.

[18]    *Id.* at 97.

7

> ("DDC"). During discovery, plaintiff deposed a former co-worker, an attorney currently working at the DDC, Nicole Corrado. Ms. Corrado recently contacted my client to tell her that a DDC supervisor, shortly before her deposition, had given her [a] "warning" about the testimony she was to give at the deposition. Ms. Corrado reported this matter to the New York State Supreme Court, Appellate Division, First Department . . . .
>
> I have no basis to believe that Ms. Corrado's deposition testimony regarding the merits of this case was altered as a result of the warning she received. From what I can tell, the supervisor in question was more concerned with what Ms. Corrado might say about the supervisor rather than with what she might say about the substance of this case. Nonetheless, I believe this is a serious matter, the Office of the Inspector General has recommended that I advise the Court about it, and Ms. Corrado is very upset about the entire experience. . . .[19]

Defendants submitted a letter in response which states that "[w]hatever 'warning' Mr. Bratton gave Ms. Corrado concededly had no impact on her deposition in this case."[20] The letter goes on to state that

> based on Ms. Corrado's deposition in this matter, taken on plaintiff's initiative, it is impossible to conclude that the deposition was influenced in a way adverse to plaintiff. In fact, Ms. Corrado went out of her way to be helpful to plaintiff, albeit through non-admissible conclusory

---

[19]    10/24/08 Letter from Beranbaum, Ex. B to the Knudsen Decl., at 1-2 (the "Beranbaum Letter" or "second letter").

[20]    10/27/08 Letter from Lee Adlerstein, defendants' counsel, Ex. C to the Knudsen Decl., at 1.

statements and conjecture.[21]

These two letters were briefly discussed at the end of a court conference held on

October 30, 2008.  During that conference, the following colloquy ensued:

> MR. BERANBAUM:  Your Honor, would you want to address my second letter?
>
> THE COURT:  Oh, right.  Your second letter.  You know, I don't think there is much to address.  I read the letter.  I'm not sure that you are asking me anything.  You just seem to want to tell me something or report it to me.  Okay.  You reported it to me.  You are not really asking me to do anything, are you?  If so, your letter didn't make that clear.  Do you want me to do anything?  We don't need names, I know you are concerned about privacy.  What do you want me to do?
>
> MR. BERANBAUM:  As an officer of the court, I wanted to apprise the Court of it and, if the Court felt necessary, to refer it to anybody.
>
> THE COURT:  I don't.[22]

## II.   LEGAL STANDARDS

### A.   Rule 60(b)(2)

The relief available under Rule 60(b) is equitable in nature.[23]  "The

---

[21]     *Id.* at 2.

[22]     Transcript of 10/30/08 Conference, Ex. D to the Knudsen Decl., at 26-27.

[23]     *See Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009).

rule 'strikes a balance between serving the ends of justice and preserving the finality of judgments.'  However, because the grant of a Rule 60(b) motion affords the movant 'extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances.'"[24]  "Accordingly, a party seeking relief under this rule must show 'highly convincing' evidence in support of [her] motion, good cause for [her] 'failure to act sooner,' and that the non-moving party would not suffer undue hardship."[25]  A Rule 60(b) motion is "addressed to the sound discretion of the district court."[26]

Rule 60(b)(2) provides relief from a final judgment where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]"  "Where alleged new evidence is concerned, the legal standards under Rule 59(a)(2) and Rule 60(b)(2) are the same."[27]  A motion for a new trial may be granted if the moving party can demonstrate that

---

[24]    *Katz v. Mogus*, No. 07 Civ. 8314, 2012 WL 263462, at *3 (S.D.N.Y. Jan. 25, 2012) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1996)).

[25]    *Id.* (quoting *Kotlicky v. United States Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (internal quotation marks and citations omitted)).

[26]    *Nemaizer*, 793 F.2d at 61.

[27]    *In re Enron Corp.*, No. 01–16034 , 2003 WL 1562202, at *14 (Bankr. S.D.N.Y. Mar. 21, 2003).

> "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching."[28]

Furthermore, "a new trial may be ordered to prevent a grave miscarriage of justice even though the 'newly discovered evidence' supporting that order would have been available to the moving party at trial had that party exercised proper diligence."[29] This exception, however, has been restricted to cases in which the evidence is "practically conclusive."[30] Finally, motions made pursuant to Rule 60(b)(2) must be made no more than one year after the entry of judgment.[31]

### B.    Rule 60(d)(3)

Rule 60(d)(3) permits a court to "set aside a judgment for fraud on the court."  Rule 60(b)(3), on the other hand, provides for relief from judgment where there is "fraud, . . . misrepresentation or misconduct by an opposing party[.]"  As

---

[28]    *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (quoting *United States v. International Bhd. of Teamsters*, 179 F.R.D. 444, 447 (S.D.N.Y. 1998)).

[29]    *Ope Shipping, Ltd. v. Underwriters at Lloyds*, 100 F.R.D. 428, 432 (S.D.N.Y. 1983).

[30]    *Id.*

[31]    *See* Fed. R. Civ. P. 60(c)(1).

with Rule 60(b)(2), there is a one year statute of limitations for claims brought

under Rule 60(b)(3).[32]

Rule 60(b) is not intended to limit a court's power to set aside a

judgment under Rule 60(d)(3) for fraud upon the court.[33]  Thus, there is potential

overlap between Rule 60(d)(3), which addresses fraud upon the court, and Rule

60(b)(3), which addresses fraud by an opposing party.[34]  "If, however, a movant

could have pursued a timely Rule 60(b)(3) motion but inexcusably failed to do so,

the movant is precluded from relying on Rule 60(d) to bring [her] claims outside of

Rule 60(b)(3)'s one-year statute of limitations period."[35]

---

[32]     *See id.*

[33]     *See Zitnansky v. International Fid. Ins. Co.*, 229 Fed. App'x 6, 7
(2d Cir. 2007).

[34]     Conceivably, fraud perpetrated by an opposing party could rise to the
level of fraud upon the court.  *See, e.g., Robinson v. Delgado*, No. CV 02–1538,
2010 WL 3448558, at *8-9 (N.D. Cal. Aug. 31, 2010) (where the defendant sought
"relief from that portion of the verdict/judgment pursuant to Fed. R. Civ. P.
60(b)(2) (newly discovered evidence), 60(b)(3) (fraud, misrepresentation or
misconduct by an opposing party), and/or 60(d)(3) (fraud on the court)").

[35]     *Rivera v. United States,* Nos. 89 CR 346, 94 Civ. 95, 2012 WL
1887133, at *1 (S.D.N.Y. May 21, 2012) (citing *In re Lawrence*, 293 F.3d 615,
622 n.5 (2d Cir. 2002)).

The requirements for relief under Rule 60(d)(3) are stringent and narrow.[36]

> The type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion under Rule 60(b)(3) for fraud on an adverse party. Fraud upon the court as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication. Fraud upon the court should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases. Fraud upon the court must be established by clear and convincing evidence.[37]

"Further, the fraud, misrepresentation or conduct must have actually deceived the court. If a court's judgment was not influenced by the conduct at issue, the judgment should not be set aside."[38] In sum, "because a party cannot fully and fairly present [her] case if the court has been improperly influenced, the standard applied to allegations of Rule 60(b)(3) fraud – that a party must be shown to have

---

[36]   *See General Medicine, P.C. v. Horizon/CMS Health Care Corp.*, 475 Fed. App'x 65, 71 (6th Cir. 2012) ("emphasizing narrow reach of fraud-on-the-court doctrine under Rule 60(d)(3), cautioning that broad application would render meaningless the remedies and time limitations prescribed by Rule 60(b)").

[37]   *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (internal quotation marks, citations and alterations omitted).

[38]   *In re Old Carco LLC*, 423 B.R. 40, 52 (Bankr. S.D.N.Y. 2010) (citing *United States v. Smiley*, 553 F.3d 1137, 145 (8th Cir. 2009)).

been precluded from fully and fairly representing [her] case – also applies in the context of a Rule 60(d)(3) motion for fraud on the court."[39]

## III.   DISCUSSION

### A.   Rule 60(b)(2)

Plaintiff seeks to re-open her case nearly three years after judgment was entered on two grounds: newly discovered evidence and fraud.  As stated earlier, newly discovered evidence is governed by Rule 60(b)(2), which has a one year statute of limitations.  According to plaintiff, Corrado's federal lawsuit corroborates the fact that Corrado was threatened and is therefore newly discovered evidence.  But plaintiff knew of the threat made to Corrado shortly after it was made in 2008.  Allegations that corroborate that which is already known do not constitute newly discovered evidence.  Thus, there is no legal basis for this claim, which is time barred in any event.

The only allegation in the Corrado Complaint that could possibly be considered newly discovered evidence is the allegation that Alan Friedberg retaliated against her upon learning of her imminent deposition.[40]  This evidence is of slight probative value, however, given that Friedberg was not a defendant in

---

[39]     *Id.* at 53 (citing *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004)).

[40]     *See* Corrado Complaint ¶ 28.

plaintiff's case.  While evidence of this alleged retaliation may have helped show the existence of a "retaliatory environment" in Anderson's case, the probability that such evidence would have changed the outcome of the jury's verdict is practically nil.  This is not the highly convincing evidence needed to support a Rule 60(b)(2) motion.  Accordingly, plaintiff's motion under Rule 60(b) is denied in its entirety.

### B.    Rule 60(d)(3)

The grounds supporting a claim of fraud were known by plaintiff and raised with the Court at a conference held on October 30, 2008, almost four years ago.  According to the Beranbaum Letter, Corrado informed plaintiff of her situation some time between August and October 24, 2008.  Despite having this knowledge, plaintiff did not ask this Court to take any action at the conference.  Nor did she raise this matter again during the pendency of her case.  Accordingly, plaintiff cannot use Rule 60(d)(3) to avoid the one year limitation period applicable to Rule 60(b)(3) motions.

Rule 60(d)(3) does not have a specific limitations period. Assuming, *arguendo*, that plaintiff's fraud claim could not have been brought under Rule 60(b)(3), it would not be time barred.  Nonetheless,  plaintiff's Rule 60(d)(3) motion fails for a number of other reasons.  *First*, in her federal Complaint,

Corrado does not allege that she was retaliated against, threatened, or otherwise dissuaded from testifying *at trial*. The threat was allegedly made in August 2008, approximately two days before Corrado was deposed. The trial took place in October of 2009. Although there is temporal proximity between the threat and Corrado's deposition, the threat was remote by the time the trial took place more than one year later. In sum, there is no evidence that Corrado did not testify at plaintiff's trial because she was threatened or otherwise intimidated by Bratton or any other supervisor. Without evidence of intimidation at the time of trial, there can be no fraud, much less fraud upon the court. *Second*, Corrado expressed significant hostility and criticism of her former DDC supervisors at her deposition. If the alleged threat had no impact on Corrado's deposition testimony, it is unlikely to have had any impact on her decision whether to testify at trial, if she in fact made that decision.[41] Finally, even if Corrado was intimidated into not testifying at trial, her absence did not seriously affect the adjudicative process, nor did it actually deceive this Court. At best, Corrado would have been a tangential witness given the limited extent of her testimony. Thus, plaintiff was not prevented from fully and fairly presenting her case as a result of Corrado's absence. Given the complete lack of fraud, a new trial is not warranted and plaintiff's Rule 60(d)(3)

---

[41]    Why Corrado did not testify on plaintiff' behalf, despite being listed as a witness, remains a mystery.

motion is denied.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's amended motion for an Order pursuant to Rule 60(b) and (d)(3) is denied.  The Clerk of the Court is directed to close this motion (Docket Entry # 132).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 2, 2012

17

## - Appearances -

**Plaintiff (Pro Se):**

Christine C. Anderson
227 Riverside Drive
New York, NY 10025
(917) 817-7170

**For Defendant(s):**

John E. Knudsen
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-8625